**DEEP WATER SLENDER WELLS, LTD., James G. Wood, and Preda Consultants, Inc., Appellants,**

v.

**SHELL INTERNATIONAL EXPLORATION & PRODUCTION, INC., Jim Adam, Graham Brander, and Mark Leonard, Appellees.**

No. 14–06–00165–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 19, 2007.

Rehearing Overruled Sept. 6, 2007.

---

Eileen F. O'Neill, Timothy F. Lee and John E. Nelson, III, Houston, TX, for appellants.

Albert Finch, Eugene R. Montalvo, Marie R. Yeates, Michael Fredette, Peter E. Mims, Philip B. Dye Jr., Houston, TX, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

In this business-torts case, we determine the scope and enforceability of a forum-selection clause. Two companies and the owner of their common parent company sued an international exploration and production company and three of its current or former employees, asserting various tort claims relating to the defendants' alleged misappropriation of the plaintiffs' alleged oilfield-technology trade secrets.

The trial court enforced a forum-selection clause requiring litigation in a foreign forum and dismissed all of the claims. The main issue on appeal is whether the trial court erred in dismissing all claims under the forum-selection clause. Concluding the trial court did not err, we affirm the trial court's order enforcing the forum-selection clause. Because in this order the trial court necessarily vacated its prior order granting partial summary judgment, the appeal from the partial summary judgment is moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant James G. Wood is a British citizen whose permanent residence is on the Isle of Man, though he recently has been working in Houston, Texas. Wood is the owner of Preda Consultants, Ltd., an English company that owns both appellant Preda Consultants, Inc. ("Preda"), a Texas corporation, and appellant Deep Water Slender Wells, Ltd. ("Deep Water"), an English company. Appellee Shell International Exploration and Production, Inc. ("Shell International") is a Delaware corporation with its principal place of business in Texas. Appellants/plaintiffs Deep Water, Preda, and Wood (hereinafter collectively "Deep Water Parties") filed suit in the court below against appellees/defendants Shell International and its current or former employees Jim Adam, Graham Brander, and Mark S. Leonard (hereinafter collectively "Shell Parties").

In June 1999, Shell International Deepwater Services, B.V. ("Shell Services"), a company incorporated in The Netherlands, and Deep Water signed a Consulting Agreement that was effective as of April 5, 1999. In this Consulting Agreement, the parties agreed, among other things, as follows:

- The "provision of services" will be carried out by Deep Water in accordance with the Consulting Agreement.

- The Consulting Agreement shall continue in force until August 30, 1999, provided that any provision of the Consulting Agreement may continue in effect for the purposes of that provision if that provision is expressly or by implication intended to remain in force after the termination of the Consulting Agreement.

- As used in the Consulting Agreement, "SERVICES" means all work to be carried out by Deep Water as further defined in Section E of the Consulting Agreement. In Section E, the parties agreed that the total scope of "the SERVICES to be provided under [the Consulting Agreement] and for which [Deep Water] shall be reimbursed in accordance with the Schedule of Prices is defined in [four attached documents]."

- In Section E, the parties further agreed that, in addition to the "SERVICES," Deep Water also would perform the work detailed in three other attached documents ("Additional Work"). Although the Additional Work would not be a part of the "SERVICES under the [Consulting Agreement]" and, therefore, Shell Services would have no ownership rights to the results of the Additional Work, Deep Water agreed to give access rights to the results of the Additional Work to each company that signed the form of Confidentiality Agreement attached to and made a part of the Consulting Agreement.

- The Consulting Agreement shall be governed exclusively by and interpreted in accordance with the law of The Netherlands, and the parties irrevocably agree that the courts of The

Hague, The Netherlands shall have exclusive jurisdiction to resolve any controversy or claim of whatever nature arising out of or relating to the Consulting Agreement or breach thereof.

Deep Water performed the work defined as "SERVICES" under the Consulting Agreement, and Shell Services received a report regarding the results of this work, in which Shell Services had ownership rights. Deep Water also performed the Additional Work. In accordance with the terms of the Consulting Agreement, Shell Services received a copy of the report reflecting the results of this work after Shell Services signed the form of Confidentiality Agreement attached to the Consulting Agreement. Although not parties to the Consulting Agreement, BP Exploration Operating Company Limited ("BP"), Den Norske Stats Oljeselskap A.S. ("Statoil"), and Elf Exploration Production ("Elf"), each signed the Confidentiality Agreement and also received a copy of the report reflecting the results of the Additional Work. In the Confidentiality Agreement, the parties thereto agreed that the Confidentiality Agreement contains their entire agreement and supersedes all prior understandings, arrangements, and agreements among these parties with respect to the subject matter of that agreement.

In their live pleading, the Deep Water Parties make the following allegations:

- James G. Wood is president and Chief Executive Officer of Preda and Deep Water.

- Mark Leonard is president and Chief Executive Officer of Shell International.

- During the 1990s, Wood began exploring ways to develop technology that would permit the economical development of deep water oil and gas reserves in regions that do not have the meteorological, geographic, and geological challenges of areas where deep water drilling evolved. Wood formed Deep Water to develop a kit that would allow conversion of standard offshore drilling rigs into safe, economical, and effective deep water drilling platforms.

- The Deep Water Parties spent thousands of engineering hours and tens of thousands of dollars to develop this technology.

- In 1999, after the Deep Water Parties had spent much valuable time and money developing this technology, they had an opportunity to further develop the technology and to put it to a practical test in Africa.

- "Shell International Deepwater Services, B.V., **as an affiliate alter ego and predecessor** of Shell International Exploration and Production, Inc. ('Shell') agreed to work with [the Deep Water Parties] in the WADO field off the coast of Nigeria to put [the Deep Water Parties'] technology to work."[1]

- For the opportunity to work on the WADO field project, Shell International[2] and other companies agreed

1. Emphasis added.

2. In the relevant part of the petition containing this allegation, the Deep Water Parties refer to "Shell." On Page 2 of the petition, the Deep Water Parties state that "Shell Deepwater" or "Shell" will be the defined term in the petition for Shell International Exploration and Production, Inc. As reflected in the previous item in this list, the Deep Water Parties later appear to state that "Shell" also will be a defined term for "Shell International Deepwater Services, B.V., as an affiliate alter ego and predecessor of Shell International Exploration and Production, Inc." Given the allegation that these two entities are alter egos, there might be a reason-

that they would keep all information provided by Deep Water confidential. These parties defined the confidential information using the definition of "Slender Well Technology" that is also set forth and used in the Deep Water Parties' petition. This definition is the same definition of the confidential "Slender Well Technology" that is used in the Confidentiality Agreement.

- Under the Confidentiality Agreement and other oral agreements with Shell International and the individual defendants, the Deep Water Parties continued to move on putting this technology to work. The parties all agreed that the Deep Water Parties would own this technology and have the incentive of benefiting economically from its development. For its part, Shell International would benefit from the use of the Deep Water Parties' engineering expertise and licensing from the Deep Water Parties of their technology for use in the economical development of Shell International's reserves.

- The Deep Water Parties and Shell International entered into a multi-year partnership to develop this technology under this joint and mutual understanding. This partnership continued from 1999 until 2002. During this period the parties shared a confidential relationship.

- Without the knowledge of the Deep Water Parties, this relationship changed when Shell International assigned oversight of this joint venture to defendant Jim Adam, an employee of Shell International, and when the geographic location of Shell International's development team shifted to Houston. Adam induced the Deep Water Parties to divulge this technology to Shell International, intending to convert it to Shell International's use. Adam and Shell International continued the pretense by express agreement and course of dealings that Shell International would not convert this technology to its own use.

- Defendant Graham Brander, in the course and scope of his employment with Shell International, converted the Deep Water Parties' confidential information, trade secrets, and intellectual property and published it in a trade journal.

- The Shell Parties' tortious acts culminated in their production of the Deep Water Parties' kit, now in use on a rig off the coast of Egypt, without paying for the use of the kit. Shell International also intends to build or is in the process of building additional conversion kits using the technology stolen from the Deep Water Parties.

- Defendant Leonard, a Shell International employee and vice principal set out to defame Wood and to tortiously interfere with the Deep Water Par-

---

able basis for the Deep Water Parties' using the same defined term for both companies. Nonetheless, at oral argument, the Deep Water Parties asserted that the second defined term for "Shell" includes only Shell International. If this is correct, then in this item, the Deep Water Parties are alleging that Shell International entered into the contract in question and agreed to keep the information confidential. The allegation in this item may also reflect the Deep Water Parties' argument that Shell International is a party to the Confidentiality Agreement based on a clause therein stating that the named companies sign on behalf of their affiliated companies. We presume in our analysis that "Shell" as used in the petition refers to Shell International; however, given the Deep Water Parties' allegation that the two Shell entities are alter egos, it does not matter which interpretation of this defined term is used.

ties' relationships with third parties. Although the Shell Parties knew that the opposite was true, Leonard and Shell International portrayed Wood in public "as a flake, or worse; a dishonest person or criminal who was passing off Shell's technology as his own." Shell International tortiously interfered with the Deep Water Parties' business relationships and prospective business relationships with Cameron Iron Works and British Petroleum.

- Shell International committed fraud, breaches of fiduciary duty, conversion of intellectual property, theft of trade secrets, and tortious interference with the Deep Water Parties' business relationships and prospective business relationships.

The Shell Parties filed a motion to dismiss, seeking to enforce the forum-selection clause contained in the Consulting Agreement. Originally, the trial court denied this motion. The Shell Parties then filed a motion to reconsider this ruling. The Shell Parties also filed three motions for partial summary judgment, asserting (1) the alleged trade secrets are not trade secrets as a matter of law, (2) Wood's and Preda's misappropriation-of-trade-secrets claims fail as a matter of law because they do not own the alleged trade secrets as a matter of law, and (3) one of the Deep Water Parties' theories for tortious-interference liability fails as a matter of law.

On November 16, 2005 at 2:52 p.m., the trial court made various evidentiary rulings and decided three motions for partial summary judgment, granting some of the relief requested and denying some of the relief requested (hereinafter "Partial Summary Judgment"). Twenty-four minutes later the trial court granted the Shell Parties' motion for reconsideration "in all things" and dismissed all claims and all parties so that the Deep Water Parties could pursue all these claims in the courts of The Hague. The trial court noted in this order that the Shell Parties had consented to the jurisdiction of the courts of The Hague for the purposes of any suit the Deep Water Parties might file there regarding the events and transactions made the basis of this suit. The trial court later denied the Deep Water Parties' motion to vacate this order.

## II. ISSUES PRESENTED

On appeal, the Deep Water Parties raise a number of challenges to the enforcement of the forum-selection clause. They do not, however, argue that the enforcement of the forum-selection clause as to Wood and Preda fails because these parties did not sign the Consulting Agreement; therefore, this court need not address any issues in this regard. Under their first issue, the Deep Water Parties argue the trial court erred in dismissing the claims based on the forum-selection clause for the following reasons:

(1) As a matter of law, the forum-selection clause does not govern the separate Confidentiality Agreement that contains no forum-selection clause, addresses a different subject, and is between different parties.

(2) While the Deep Water Parties' claims relate to the Confidentiality Agreement, they do not relate to the Consulting Agreement that contains the forum-selection clause.

(3) The Consulting Agreement did not involve the technology involved in the dispute in this case, which was developed after the Consulting Agreement terminated.

(4) All the Shell Parties were not parties to the Consulting Agreement and did not prove that they were "transaction participants" entitled to enforce the forum-selection clause.

(5) The trial court erred in enforcing the forum-selection clause because the Shell Parties did not prove that the courts of The Hague would enforce this forum-selection clause as to these parties.

(6) The trial court abused its discretion in dismissing the claims because Texas public policy strongly favors the litigation of this dispute in Texas.

(7) The trial court erred in sustaining the Shell Parties' objections to parts of Wood's affidavit.

Under their second issue, the Deep Water Parties argue that, even if the forum-selection clause is enforceable, this court should reverse the trial court's Partial Summary Judgment because there is a fact issue as to the ownership of the alleged trade secrets.

## III. STANDARD OF REVIEW

■ A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit. See *In re AIU Ins. Co.*, 148 S.W.3d 109, 111–21 (Tex.2004); *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review the trial court's granting of such a motion for an abuse of discretion. *See Phoenix Network Techs. (Europe) Ltd.*, 177 S.W.3d at 610. However, to the extent that our review involves the construction or interpretation of an unambiguous contract, the standard of review is de novo. *See id.*

## IV. ANALYSIS

■ Until recently, Texas courts and federal courts used different analyses to determine the enforceability of mandatory forum-selection clauses.[3] *See Phoenix Network Techs. (Europe), Ltd.*, 177 S.W.3d at 611–14. However, the Supreme Court of Texas recently adopted the federal courts' analysis of these clauses. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex.2005); *In re Automated Collection Tech., Inc.*, 156 S.W.3d 557, 558–59 (Tex.2004); *In re AIU Ins. Co.*, 148 S.W.3d 109, 111–14 (Tex.2004); *Phoenix Network Techs. (Europe), Ltd.*, 177 S.W.3d at 614. Under the unambiguous language of the Consulting Agreement, Deep Water and Shell Services agreed that the courts of The Hague shall have exclusive jurisdiction to resolve any controversy or claim of whatever nature arising out of or relating to the Consulting Agreement. This is a mandatory forum-selection clause. In deciding whether to enforce a mandatory forum-selection clause, courts must determine whether the claims in the case at hand fall within the scope of the forum-selection clause and whether the court should enforce the clause. In addition to resolving issues of scope and enforceability, courts also may have to decide issues as to whether nonsignatories to the contract can enforce the forum-selection clause contained therein. In this case, the Deep Water Parties have asserted arguments in all three of these categories.

**A. Did the trial court err in determining that the claims in this case fall within the scope of the forum-selection clause?**

■ When a party seeks to enforce a mandatory forum-selection clause, a court must determine whether the claims in

---

**3.** As used in this opinion, a "mandatory forum-selection clause" is a contractual provision that requires certain claims to be decided in a forum or forums other than the forum in which the claims have been filed.

question fall within the scope of that clause. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221–22 (5th Cir.1998). The court bases this determination on the language of the clause and the nature of the claims that are allegedly subject to the clause. *See id.* If the claims fall within the scope of the clause, the court must determine whether to enforce the clause.

■ On appeal, the Deep Water Parties assert the trial court erred in concluding that their claims fall within the scope of the forum-selection clause in the Consulting Agreement. This clause covers "any controversy or claim of whatever nature arising out of or relating to [the Consulting Agreement] or breach thereof." The Deep Water Parties argue that their claims do not arise out of or relate to the Consulting Agreement, although they acknowledge that their claims relate to the Confidentiality Agreement. The Deep Water Parties assert claims for fraud, breaches of fiduciary duty, conversion of intellectual property, theft of trade secrets, and tortious interference with the Deep Water Parties' business relationships and prospective business relationships. Although the Deep Water Parties do not assert claims for breach of contract, they base their tort claims in part on an alleged tortious breach of an alleged "confidential relationship" arising from an alleged multi-year partnership between the Deep Water Parties and Shell International to develop the "Slender Well Technology." The Deep Water Parties pleaded that this partnership started in 1999, when, for the opportunity to work on the WADO field project, Shell International agreed that it would keep confidential all information provided by Deep Water. Although the Deep Water Parties' petition does not contain a specific reference to either the Consulting Agreement or the Confidentiality Agreement, the definition of the technology which Shell International allegedly promised to keep confidential is the same definition used in the Confidentiality Agreement. It is clear from the petition that the Deep Water Parties base their tort claims in part on an alleged "confidential relationship" arising from an alleged multi-year partnership that began when the parties signed the Confidentiality Agreement.[4] On appeal, the Deep Water Parties assert that their claims do not relate to the Consulting Agreement; however, the Deep Water Parties concede that "the Confidentiality Agreement relates to [the Deep Water Parties'] claims because it evidences

---

**4.** On appeal, the Deep Water Parties assert that this court must construe the allegations in their petition as favorably as possible, and they rely on *Pozero v. Alfa Travel, Inc.*, 856 S.W.2d 243, 245 (Tex.App.-San Antonio 1993, no writ). Because no special exceptions were sustained against the petition, this court must liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition, even if the petition fails to state all of the elements of that claim. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995). Nonetheless, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 336 (Tex.App.-Houston [14th Dist.] 2005, no pet). The petition must give fair notice of the claims being asserted, and, if we cannot reasonably infer that the petition contains a claim, then we must conclude the petition does not contain this claim, even under our liberal construction. *See SmithKline Beecham Corp.*, 903 S.W.2d at 354–55. We respectfully disagree with the different legal standard stated by the *Pozero* court. *See Pozero v. Alfa Travel, Inc.*, 856 S.W.2d 243, 245 (Tex.App.-San Antonio 1993, no writ). The *Pozero* court appeared to strictly construe the forum-selection clause before it, and its analysis and result are incompatible with the current analysis adopted by the Supreme Court of Texas. *Compare In re AIU Ins. Co.*, 148 S.W.3d at 111–14, *with Pozero*, 856 S.W.2d at 245.

the confidential relationship that developed between [the Deep Water Parties] and [the Shell Parties]. . . ."

■ The trial court found that the Confidentiality Agreement is part of the Consulting Agreement, and the parties devote much of their appellate briefing to whether this finding is correct. The Deep Water Parties assert the Confidentiality Agreement is separate from and not a part of the Consulting Agreement. For the purposes of our review, we presume that the Confidentiality Agreement was entered into after the Consulting Agreement and is not a part of the Consulting Agreement. However, even operating under this presumption, the uncontroverted evidence shows that the form of the Confidentiality Agreement was incorporated into and formed part of the Consulting Agreement. Furthermore, the Consulting Agreement addressed the Additional Work to be performed by Deep Water, stated that Shell Services would have no ownership rights to the results of this work, and provided that Shell Services could access these results upon its signing of the form of the Confidentiality Agreement. When Deep Water performed the Additional Work and provided the results of this work to Shell Services after Shell Services and Deep Water signed the Confidentiality Agreement, the parties were acting pursuant to the Consulting Agreement. The Deep Water Parties' claims are based on subsequent conduct that allegedly violated a purported confidential relationship that started when Shell Services and Deep Water signed the Confidentiality Agreement

pursuant to the terms of the Consulting Agreement. We conclude the trial court did not err in determining that the Deep Water Parties' claims arise out of or relate to the Consulting Agreement.[5] *See Marinechance Shipping, Ltd.*, 143 F.3d at 221–23 (holding trial court did not err in concluding that tort claims arose out of or by virtue of the contract with the forum-selection clause); *Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 557, 559–60 (N.D.Tex.2003) (holding that tort claim arose out of or related to agreement containing forum-selection clause and was therefore within the clause's scope).

In support of their argument that the Consulting Agreement does not relate to the Confidentiality Agreement, the Deep Water Parties assert that the Consulting Agreement related to the work defined as "SERVICES" under the Consulting Agreement, rather than the Additional Work, which the Deep Water Parties claim was "expressly *excluded* from the terms of the Consulting Contract." Under the unambiguous language of the Consulting Agreement, Deep Water would perform certain services as to which Shell Services would own the results, and Deep Water also would perform other services, as to which Deep Water would own the results but Shell Services could access the results upon signing the form Confidentiality Agreement attached to and contained in the Consulting Agreement. To distinguish the two different categories of work, the Consulting Agreement refers to the former as "SERVICES" and the latter as "Additional Work."

5. The Deep Water Parties assert that a forum-selection clause applies only to the construction of rights and liabilities under the contract in which the clause is found, citing *Busse v. Pacific Cattle Feeding Fund No. 1, Ltd.*, 896 S.W.2d 807, 812–13 (Tex.App.-Texarkana 1995, writ denied). *Busse* predates the Texas Supreme Court's adoption of the federal analysis for forum-selection clauses, and *Busse* involved a narrow forum-selection clause that covered only the construction of the parties' rights and obligations under the contract in which the clause was contained. *Busse v. Pacific Cattle Feeding Fund No. 1, Ltd.*, 896 S.W.2d 807, 812–13 (Tex.App.-Texarkana 1995, writ denied). *Busse* is not on point.

The Deep Water Parties rely on two parts of the Consulting Agreement in which the parties state that the former services are the "SERVICES to be provided under this Contract" and that the latter services "shall not form part [sic] of the SERVICES under the Contract." In the Consulting Agreement the parties state that "SERVICES shall mean all work to be carried out and consultancy and associated services to be performed by [Deep Water] as further defined in Section E: Scope of Work." In Section E, the parties detail the work that falls within the scope of the "SERVICES," and Deep Water also agrees to perform the Additional Work. At the beginning of the Consulting Agreement, the parties agree that "the provision of services shall be carried out by [Deep Water] in accordance with the following documents [which includes Section E]." Although the Additional Work may not be part of the "SERVICES" provided under the Consulting Agreement and though many of the terms of the Consulting Agreement apply only to the "SERVICES," Deep Water unambiguously promised to perform the Additional Work in Section E of the Consulting Agreement. The Shell Parties argue that this work directly relates to the claims asserted by the Deep Water Parties because it involves technology and alleged trade secrets that the Deep Water Parties claim have been misappropriated by the Shell Parties. The Deep Water Parties disagree with this argument. However, even if this argument were incorrect, Shell Services signed the form of Confidentiality Agreement contained in the Consulting Agreement so that it could obtain the results of the Additional Work that Deep Water owned, all as agreed in the Consulting Agreement. Because the Deep Water Parties allege that these actions gave rise to a partnership and a confidential relationship whose later alleged breach gave rise to their tort claims, the trial court did not err in concluding that these claims arise out of or relate to the Consulting Agreement. For these reasons, we find unconvincing the Deep Water Parties' argument based on the definition of the term "SERVICES."

 The Deep Water Parties assert that, under the merger clause in the Confidentiality Agreement, the Confidentiality Agreement supersedes Deep Water's prior agreement in the Consulting Agreement to litigate claims in The Hague. One of the premises of this argument is that the Confidentiality Agreement took effect after the Consulting Agreement. The Consulting Agreement was signed in June 1999, and made effective as of April 5, 1999. The Deep Water Parties assert that the Confidentiality Agreement was signed at a later date; they indicate that all the signatories had signed the Confidentiality Agreement by May 27, 1999. Our record does not contain an executed copy of the Confidentiality Agreement. The copy of the Confidentiality Agreement in our record (1) is attached to the Consulting Agreement, (2) is signed only by Deep Water, and (3) contains an empty blank space for the date in 1999 on which the Confidentiality Agreement is to be effective. A letter in our record indicates all parties to the Confidentiality Agreement had signed it by May 27, 1999; however, nothing in our record reflects the effective date of the Confidentiality Agreement. If the final, executed Confidentiality Agreement were made effective on or before April 5, 1999, then the Deep Water Parties' argument would be based on an incorrect factual premise. But even presuming for the sake of argument that the Confidentiality Agreement took effect after the Consulting Agreement, their argument still lacks merit.

In the merger clause of the Confidentiality Agreement, Shell Services, Deep

Water, BP, Statoil, and Elf agreed that the Confidentiality Agreement contains their entire agreement with respect to the subject matter of that agreement, and they agreed that the Confidentiality Agreement supersedes all prior agreements between Deep Water and the other parties regarding the subject matter of the Confidentiality Agreement. Enforcement of the agreement between Deep Water and Shell Services to litigate all disputes relating to the Consulting Agreement in The Hague does not conflict with the terms of the Confidentiality Agreement regarding the agreement of the parties thereto as to the subject matter of the Confidentiality Agreement. There need not be a forum-selection clause in the Confidentiality Agreement for disputes regarding that agreement to relate to the Consulting Agreement. Therefore, the Deep Water Parties' argument regarding the merger clause in the Confidentiality Agreement lacks merit.

■ The Deep Water Parties also assert that the Consulting Agreement ended on August 30, 1999. However, the part of the Consulting Agreement on which the Deep Water Parties rely for this proposition does not state that the agreement ends on August 30, 1999. Rather, it states as follows:

This Contract ... shall continue in force until **30 August 1999** ... always provided that in the event of such expiry or termination this Contract or any provision thereof may continue to remain effective for the purposes of such provision which is expressly or by implication intended to come into or remain in force on or after such expiry or termination.

Under the unambiguous language of the Consulting Agreement, the only parts of that agreement that expire on August 30, 1999 are the parts that are not expressly or impliedly intended to remain in force after that date. The forum-selection clause addresses the forum in which the parties will litigate any future disputes arising out of or relating to the Consulting Agreement. Therefore, the parties intended and impliedly agreed for this clause to remain in force after August 30, 1999. *See Texas Source Group, Inc. v. CCH, Inc.,* 967 F.Supp. 234, 238–39 (S.D.Tex.1997) (enforcing forum-selection clause even though prior agreement that contained the forum-selection clause had expired by its own terms before the lawsuit was filed); *Strata Heights Int'l Corp. v. Petroleo Brasileiro, S.A.,* No. 02–20645, 2003 WL 21145663, at *1, *6–7 (5th Cir. Apr.28, 2003) (not designated for publication) (same). Therefore, the Deep Water Parties are incorrect when they assert that the Consulting Agreement expired on August 30, 1999.

■ The Deep Water Parties also assert that their claims do not relate to the Consulting Agreement because they have not sued Shell Services or any of its employees. This argument fails based on the Deep Water Parties' allegation in their petition that Shell Services is the alter ego of Shell International. If, as pleaded by the Deep Water Parties, Shell Services is an alter ego of Shell International, then the separateness between these corporations would have ceased, and the courts would view them as a single corporation.[6] *See, e.g., Mosqueda v. G & H Diversified Mfg., Inc.,* 223 S.W.3d 571, 582 (Tex.App.-Houston [14th Dist.], 2007, pet. filed).

6. The Deep Water Parties argue that the analysis is different because they have alleged that Shell Services is the alter ego of Shell International instead of alleging that Shell International is the alter ego of Shell Services. We disagree. If either allegation is correct, then the two companies are treated as one.

Therefore, under the Deep Water Parties' petition, Shell International and Shell Services are the same corporation, and the Deep Water Parties have sued Shell Services and its current or former employees.

For these reasons, we are unpersuaded by the Deep Water Parties' arguments that their claims do not fall within the scope of the forum-selection clause of the Consulting Agreement.[7]

**B. Did the trial court err in enforcing the forum-selection clause because the interests of the public and the witnesses strongly favor litigating this case in Texas?**

The Deep Water Parties also assert that the trial court erred in enforcing the forum-selection clause because the interests of the witnesses and the public strongly favor litigating these claims in Texas rather than in the forum selected in the Consulting Agreement. The Deep Water Parties base this argument on the prior Texas legal standard for deciding whether to enforce a mandatory forum-selection clause. *See, e.g., Holeman v. Nat'l Bus. Institute, Inc.*, 94 S.W.3d 91, 101 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). However, as noted above, the Supreme Court of Texas recently abandoned this legal standard for analyzing mandatory forum-selection clauses, opting instead to adopt the standard employed by federal courts.

Therefore, the Deep Water Parties' argument is premised on the wrong legal standard. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 793; *In re Automated Collection Techs., Inc.*, 156 S.W.3d at 558–59.

 Under the applicable legal standard, the trial court presumes that a mandatory forum-selection clause is valid and enforceable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *In re AIU Ins. Co.*, 148 S.W.3d at 111–12. The trial court gives such a clause full effect absent a strong showing by the resisting party that the court should set aside the clause because (1) the clause is invalid based on such reasons as fraud, undue influence, or overweening bargaining power; or (2) enforcement would be unreasonable and unjust. *See M/S Bremen,* 407 U.S. at 10–15, 92 S.Ct. at 1913–16; *In re AIU Ins. Co.*, 148 S.W.3d at 111–12. Enforcement of a forum-selection clause would be unreasonable and unjust if (1) enforcement of the clause would contravene a strong public policy of the forum in which suit was filed or (2) the balance of convenience is strongly in favor of litigation in the forum in which suit was filed, and litigation in the forum identified in the clause would be so manifestly and gravely inconvenient to the resisting party that the resisting party effectively would be de-

---

**7.** The Deep Water Parties also assert that the trial court's holding conflicts with *Hooks Industrial, Inc. v. Fairmont Supply Co.*, No. 14-00-000 [14th Dist.] Apr. 19, 2001,62–CV, 2001 WL 395341 (Tex.App.-Houston pet. denied)(not designated for publication). This opinion is not designated for publication and has no precedential value. Tex.R.App. P. 47.7. In addition, this opinion applied Pennsylvania law to a narrow forum-selection clause that required claims for "breach of this contract" to be asserted in Pennsylvania courts. *Hooks Indus., Inc. v. Fairmont Supply Co.*, No. 14-00-00062-CV, 2001 WL 395341,

at *2 (Tex.App.-Houston [14th Dist.] Apr. 19, 2001, pet. denied) (not designated for publication). Because the forum-selection clause was narrow and was included only in terms and conditions applicable to sales that were not the basis of the lawsuit in question, this court held that the forum-selection clause did not cover the claims, even though the terms and conditions were contained in an exhibit attached to the contract that the plaintiff alleged was breached. *Id.* at *2–3. The decision in *Hooks Industrial* does not change the analysis in this case.

prived of a meaningful day in court. *See M/S Bremen,* 407 U.S. at 15–19, 92 S.Ct. at 1916–18; *In re AIU Ins. Co.,* 148 S.W.3d at 111–12. The Deep Water Parties have not argued or presented evidence showing that litigation in The Hague would be so manifestly and gravely inconvenient to the Deep Water Parties that they effectively would be deprived of a meaningful day in court. We conclude that the trial court did not abuse its discretion in impliedly determining that the Deep Water Parties failed to make the required strong showing. *See Phoenix Network Techs. (Europe) Ltd.,* 177 S.W.3d at 620–21 (concluding party was bound by forum-selection clause because it had not made this required showing).

### C. Did the trial court err in concluding that the Shell Parties could enforce the forum-selection clause?

Both in their motion to dismiss and in their motion for reconsideration of the motion to dismiss, the Shell Parties asserted that they can enforce the forum-selection clause even though they did not sign the Consulting Agreement (1) because they are "transaction participants"[8] and (2) under principles of equitable estoppel. The trial court dismissed based on both theories.[9]

Neither the Supreme Court of Texas nor this court have addressed whether it is proper to use the transaction-participant analysis as a theory for allowing a nonsignatory to enforce a forum-selection clause. However, we need not address this issue today because the trial court's ruling is sustainable based on equitable estoppel.

The First Court of Appeals has determined that the equitable-estoppel theories regarding nonsignatories to arbitration agreements also should be applied to forum-selection clauses that do not involve arbitration.[10] *See Phoenix Network Techs. (Europe) Ltd.,* 177 S.W.3d at 622–24. We agree. The Supreme Court of the United States has stated that an arbitration agreement is a specialized kind of forum-selection clause. *See Rodriguez de Quijas*

---

**8.** *See Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (allowing nonsignatories to enforce clause if they are "transaction participants" because the alleged conduct of the nonparties is so closely related to the contractual relationship that the forum-selection clause applies to all defendants); *Accelerated Christian Educ., Inc. v. Oracle Corp.,* 925 S.W.2d 66, 75 (Tex.App.-Dallas 1996, no writ) (adopting transaction-participant analysis).

**9.** The trial court stated in its order that the Shell Parties are "transaction participants" and did not specifically address equitable estoppel. Nonetheless, the court stated that the Shell Parties' motion for reconsideration was "in all things GRANTED" and one of the "things" in the motion was the assertion that the Shell Parties could enforce the forum-selection clause based on equitable estoppel. *See Kanetzky v. Murphy,* 862 S.W.2d 653, 657 (Tex.App.-Austin 1993, no writ) (concluding that order granting motion "in all things" granted everything asserted in motion, even

those things not expressly stated in the order); *see also Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.,* No. 05–90–00424–CV, 1991 WL 231822, at *8 (Tex.App.-Dallas Nov. 12, 1991, no writ) (not designated for publication) (stating that court's granting of motion "in all things" constitutes approval by the court of everything contained in the motion). Furthermore, even if the trial court had not dismissed based in part on the equitable-estoppel theory, this court still would be able to affirm the trial court's order based on this theory because the Shell Parties presented it to the trial court in their motions. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

**10.** The Deep Water Parties argue on appeal that nonsignatories may never enforce forum-selection clauses. The only case they cite for this proposition does not so hold. *See Mabon Ltd. v. Afri–Carib Enters., Inc.,* 29 S.W.3d 291, 296 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We reject this argument.

v. *Shearson/American Exp., Inc.*, 490 U.S. 477, 482–83, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989). Likewise, the Supreme Court of Texas has described an arbitration agreement as "another type of forum-selection clause" and has stated that there is no meaningful distinction between a non-arbitration forum-selection clause and an arbitration clause. *See In re AIU Ins. Co.*, 148 S.W.3d at 115–16. Moreover, the Supreme Court of Texas has applied precedents involving waiver of arbitration and availability of mandamus to enforce a right to arbitration in determining the same issues as to a non-arbitration forum-selection clause. *See id.* at 115–16, 120–21. We see no reason that these courts would not also apply arbitration law's equitable-estoppel theories for enforcement by a nonsignatory to non-arbitration forum-selection clauses. *See Phoenix Network Techs. (Europe) Ltd.*, 177 S.W.3d at 622–24.

Courts should apply equitable estoppel when a signatory to the contract containing the forum-selection clause raises allegations of substantially interdependent and concerted misconduct by both nonsignatories and one or more signatories to the contract. *See Meyer v. WMCO–GP, L.L.C.*, 211 S.W.3d 302, 306 (Tex.2006); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000). In all substantial respects, the Deep Water Parties do not draw distinctions among themselves in the allegations and claims they make against the Shell Parties. Deep Water is a signatory to the Consulting Agreement, and the Deep Water Parties have not asserted that the Shell Parties cannot enforce the forum-selection clause because Wood and Preda are nonsignatories. Under the allegations raised by the Deep Water Parties, Shell International is a signatory because (as alleged by the Deep Water Parties) it is the alter ego of Shell Services. The Deep Water Parties assert that this signatory and the individual defendants engaged in substantially interdependent and concerted tortious conduct with the intent to defraud the Deep Water Parties, misappropriate their trade secrets, and cause them substantial injury.[11] Therefore, the trial court did not abuse its discretion by concluding that all the Shell Parties can enforce the forum-selection clause based on principles of equitable estoppel. *See Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir.2002) (concluding that nonsignatory would be able to enforce arbitration clause because plaintiff alleged concerted action by the defendants to misappropriate trade secrets and commit fraud, although appellate court deferred to trial court's discretion to nevertheless not enforce arbitration as to nonsignatory); *In re EGL Eagle Global Logistics, L.P.*, 89 S.W.3d 761, 765 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding [mand. denied]) (holding that nonsignatory current employer could enforce arbitration clause because signatory former employer alleged concerted action by current employer and signatory employee to misappropriate former employer's trade secrets).

---

**11.** The Deep Water Parties assert in their petition, among other things, that "[the Shell Parties] concealed from [the Deep Water Parties] their intent to use fraudulent means knowingly and tortiously to interfere with [the Deep Water Parties'] rights and [the Shell Parties'] intention to convert [the Deep Water Parties'] slender well technology to [the Shell Parties'] uses and profit." In another allegation in the same pleading, the Deep Water Parties refer to "[the Shell Parties'] fraud or fraudulent scheme, breaches of fiduciary duty, theft of trade secrets, or other breaches of duty." The Deep Water Parties also allege that the Shell Parties "intended [the Deep Water Parties] to rely on their fraudulent concealment to prevent [the Shell Parties'] plan from being discovered."

## D. Did the Shell Parties have to prove that the courts of The Hague recognize the validity of forum-selection clauses such as the one at issue in this case?

■ On appeal, the Deep Water Parties assert that, to enforce the forum-selection clause, the Shell Parties were required to prove that the courts of The Hague recognize the validity of forum-selection clauses such as the one at issue in this case. In fact, the Deep Water Parties go further and assert the Shell Parties had to prove that the courts of The Hague would allow the Shell Parties to enforce this specific forum-selection clause. The only legal authority the Deep Water Parties cite to support this argument is an obiter dictum from this court in a case that predates the Texas Supreme Court's adoption of the federal forum-selection-clause analysis. *See Mabon Ltd. v. Afri–Carib Enters., Inc.,* 29 S.W.3d 291, 296–98 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Under the newly adopted federal analysis, the Shell Parties do not have to prove that (1) courts in The Hague recognize the validity of forum-selection clauses such as the one at issue in this case or (2) courts in The Hague would allow the Shell Parties to enforce this specific forum-selection clause. *See Phoenix Network Techs. (Europe), Ltd.,* 177 S.W.3d at 618 (holding that under federal analysis party invoking forum-selection clause need not show that forum selected recognizes the validity of forum-selection clauses).

Finding no merit in any of the arguments presented under the first issue, we overrule this issue.[12]

## E. Are all issues regarding the trial court's Partial Summary Judgment moot?

■ In their second issue, the Deep Water Parties assert the trial court erred in granting the Partial Summary Judgment that it signed shortly before it signed the order dismissing all claims based on the forum-selection clause. A dismissal of all claims to enforce a clause requiring litigation in another forum is a determination that the merits of the claims should be determined elsewhere; therefore, enforcement of such a forum-selection clause is a nonmerits basis for dismissal. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* —— U.S. ——, ——, 127 S.Ct. 1184, 1192–94, 167 L.Ed.2d 15 (2007) (holding that forum non conveniens was nonmerits basis for dismissal because it was a determination that the merits of the claims should be determined elsewhere rather than a decision regarding substantive law); *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548–50 (4th Cir. 2006) (holding that dismissal enforcing forum-selection clause requiring litigation in Japan was not a dismissal on the merits). In its order dismissing all claims based on the forum-selection clause, the trial court explicitly stated that its order is final and disposes of all claims and parties. We conclude that this order necessarily vacated the trial court's prior Partial Summary Judgment because a dismissal based on a forum-selection clause is inconsistent with a ruling on the merits. *See Sucampo Pharms., Inc.,* 471 F.3d at 548–50; *Kirby v. SBC Servs., Inc.,* 391 F.Supp.2d 445, 451–52 (N.D.Tex.2005) (giving effect to part of Texas state court order that dismissed on nonmerits basis—lack of sub-

---

**12.** The Deep Water Parties also assert that the trial court erred in sustaining various objections to portions of Wood's affidavit. However, even if this court considered all of the evidence that the trial court struck in this regard, it would not change this court's analysis or judgment in this case. Therefore, any error in sustaining these objections is not reversible.

ject-matter jurisdiction—and refusing to give effect to part of order that granted summary judgment on the merits because that portion was necessarily nullified by the nonmerits dismissal); *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 39–40 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding that second judgment vacated first judgment with which second judgment was inconsistent, even though trial court did not refer to first judgment or expressly state an intention to vacate the prior judgment in second judgment); *Su Inn Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 680 (Tex.App.-Amarillo 1998, pet. denied) (holding that terms of judgment disposing of all parties and claims necessarily vacates prior inconsistent interlocutory order, even though trial court did not refer to prior order or expressly state an intention to vacate the prior order in second judgment); *Dickson & Assocs. v. Brady*, 530 S.W.2d 886, 887 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ) (holding that subsequent order dismissing whole case for want of prosecution necessarily vacated prior interlocutory summary judgment even though the trial court did not refer to the prior judgment in the dismissal order). Therefore, the second issue is moot because the trial court effectively vacated the Partial Summary Judgment in its order dismissing the case and enforcing the forum-selection clause. To the extent the Deep Water Parties appeal this Partial Summary Judgment, we hold the Partial Summary Judgment has been vacated, and we dismiss as moot their appeal of it.

## V. CONCLUSION

The Deep Water Parties' claims arise out of or relate to the Consulting Agreement. The Deep Water Parties did not make the requisite strong showing in the trial court that the forum-selection clause should be set aside because (1) the clause is invalid based on such reasons as fraud, undue influence, or overweening bargaining power; or (2) enforcement would be unreasonable and unjust. The trial court did not abuse its discretion by concluding that all the Shell Parties can enforce the forum-selection clause based on equitable estoppel. The Shell Parties are not required to prove that (1) the courts of The Hague recognize the validity of forum-selection clauses such as the one at issue in this case or (2) the courts of The Hague would enforce this specific forum-selection clause. Because the trial court effectively vacated its Partial Summary Judgment by dismissing all claims to enforce the forum-selection clause, this court lacks jurisdiction over the Deep Water Parties' appeal from the trial court's Partial Summary Judgment. Accordingly, we affirm the trial court's order enforcing the forum-selection clause and dismiss as moot the appeal from the trial court's vacated Partial Summary Judgment.