**Affirmed and Memorandum Opinion filed May 12, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00375-CV

---

### PRIEUR LEARY, III, Appellant

### V.

### COINMINT, LLC AND COINMINT LIVING TRUST, LLC, Appellees

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2019-86203**

---

### MEMORANDUM OPINION

This is an interlocutory appeal from an order denying nonresident appellant Prieur Leary, III's special appearance brought pursuant to Texas Rule of Civil Procedure 120(a). We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The story behind this case begins with two "mint"-named entities and their human counterparts: non-appealing defendant Mintvest Capital, LTD ("Capital")

and plaintiff-appellee Coinmint Living Trust, LLC, ("CLT"). Capital was and is managed by its president, defendant-appellant, Prieur Leary, III. CLT is a Delaware entity, managed by its trustee Ashton Soniat ("Soniat"); Soniat is not a party to this first installment of litigation. Though we know few details about the way-back story, we are told that Leary and Soniat were once childhood friends.

By the power of that friendship, their pair of non-natural persons and an agreement to contribute $25,000 capital, Leary and Soniat created a private Bitcoin mining firm that operates the largest digital currency center in North America. It is called Coinmint, LLC (Coinmint), the other plaintiff-appellee.

*Structuring Coinmint's Operation*

Coinmint was formed on August 22, 2016 as a Delaware Limited Liability Company comprised of two members, Capital and CLT. On November 21, 2016, Coinmint's members and managers executed the "Limited Liability Company Agreement of Coinment, LLC" (referred to herein as "Operating Agreement"), which sets out Coinmint's organizational structure, contribution and compensation scheme, and various terms of operation. Article 2 states that Coinmint "shall maintain its principal office at 20 Greenway Plaza, Suite 360, Houston, Texas 77046." Article 4 provided that the business and affairs of Coinmint were to be managed by its two managers. Each member could designate a manager. CLT designated itself and Capital designated Leary.

The Operating Agreement contains a choice-of-law provision in favor of Delaware law, and specifically the Delaware Limited Liability Company Act, and a forum-selection clause which provides that "any dispute shall lie in Harris County, Texas."

The Operating Agreement contained signature blocks for the two managers

and two members to sign and indicates that Soniat signed in his representative capacity for CLT as a member and in his representative capacity for CLT as a manager; and Leary signed in his representative capacity for Capital as a member, and in his individual capacity as a manager.

*Coinmint and CLT's Lawsuit*

Apparently, the childhood friendship deteriorated and on December 5, 2019, Coinmint and CLT filed suit against Leary for breach of contract, citing both a breach of the Operating Agreement and a breach of a "valid and enforceable insurance contract." Later that month, Coinmint and CLT filed their First Amended Petition naming Capital, noting the forum-selection clause as a basis for venue, and asserting additional claims for breach of fiduciary duty, common law fraud, and money had and received. In February 2020, Coinmint and CLT filed a Second Amended Petition with more detailed allegations, and adding a request for injunctive relief.

*Leary and Capital's Special Appearance*

In March, Leary and Capital filed a Special Appearance, challenging personal jurisdiction in Texas. In their joint verified special appearance, Leary and Capital challenge the lack of sufficient evidence to establish their minimum contacts under either a specific or general-jurisdiction analysis, and contend the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Although their special appearance acknowledges the forum-selection clause, it only addresses by way of alleging, with respect to Leary, that he "has not entered any contracts in his individual capacity with the Plaintiffs or any other Texas entities which would avail him to jurisdiction of the Texas Court system" and by concluding in their "specific jurisdiction" section that the "mere fact that Mintvest and Mr. Leary signed an operating agreement with an unenforceable

3

venue clause is insufficient to establish personal jurisdiction over Mintvest or Mr. Leary."

Subject to their special appearance, Leary and Capital also filed: (1) motions to transfer venue, to dismiss (based on Delaware law), and/or abate, claiming the Operating Agreement's venue provision is permissive, not mandatory and that under Delaware law that Coinmint and CLT were not barred from bringing their action in the Delaware Court; (2) a motion to dismiss (based on Texas Citizens Participation Act), and (3) a motion to show authority.

*Coinmint and CLT's Response*

Coinmint and CLT filed a response to Leary and Captial's special appearance, asserting that the forum-selection clause operated as Leary's and Capital's consent to the Texas forum. Coinmint and CLT argued that the provision is a valid *mandatory* forum-selection clause which requires enforcement under both Delaware and Texas law, and that even if the clause were construed as *permissive*, it operates as a valid "consent to jurisdiction". Coinmint and CLT also contended that Leary and Capital had sufficient minimum contacts under a specific-jurisdiction analysis, having purposefully availed themselves of the Texas forum through a series of continuing activities. The same day, Coinmint and CLT filed their Third Amended Petition, adding claims for intentional interference with a business relationship. Coinmint and CLT supported their third Amended Petition with exhibits which they adopted and incorporated into their special-appearance response. Coinmint and CLT also objected to "Exhibit C" to the Special Appearance, a Verified Counterclaim filed by CLT and Soniat against Capital in the Delaware lawsuit,[1] arguing that it was hearsay: that it was not "accepted into

---

[1] On December 9, 2019, Mintvest filed suit in Delaware seeking to dissolve Coinmint under the terms of the Operating Agreement, invalidate the conversion of Coinmint to a Puerto

4

the public record by the Delaware clerk, [and] there is no exception to hearsay that applies."

*Leary and Capital's Reply*

Leary and Capital filed a Reply containing (1) a procedural update, (2) objections to Coinmint and CLT's jurisdictional evidence, (3) arguments responsive to Coinmint and CLT's response to the special appearance and (4) arguments responsive to their other motions filed subject to their special appearance. In their "Procedural Update", Leary and Capital contend that in the parallel Delaware action, the Delaware Court of Chancery ruled that the Texas Court was not capable of affording complete relief, that the Texas Action was not first-filed, and that Capital's claims cannot be heard in Texas under Delaware law. In reply to the special-appearance response, Leary argued that the fiduciary shield doctrine precluded all claims asserted against him in his capacity as a manager.

*The Hearing and Order Denying Leary and Capital's Special Appearance*

At the hearing, Leary's attorney took the position that the forum-selection clause was "deemed" invalid under Delaware law and by the Delaware court, thus inapplicable to Leary or Capital. Leary's attorney also challenged the lack of evidence establishing minimum contacts contending that the fiduciary shield doctrine applied to allegations in connection with his role as Coinmint's manager, and that all other complained of activity did not relate to the State of Texas. Coinmint and CLT argued that Leary's contacts with Texas were not protected by the fiduciary shield doctrine, citing acts Leary took in Texas that formed the basis of intentional tort claims.

On May 5, the trial court issued an order sustaining Coinmint and CLT's

Rican, LLC, declare that Leary's position as a Manager, windup the company and distribute assets.

5

objection to Leary and Capital's Exhibit C, overruling all of Leary and Capital's objections to Coinmint and CLT's exhibits, and denying Leary and Capital's special appearance.

Leary and Capital filed a notice of appeal, but only Leary filed a brief. Capital's appeal was dismissed for want of prosecution. With respect to Capital's further participation in the underlying litigation, the parties have represented, and we take judicial notice that Capital has been dismissed without prejudice from the underlying case and has separately pursued claims against Coinmint and Soniat.

## II. ISSUES AND ANALYSIS

On appeal, Leary contends that Coinmint and CLT failed to plead or prove sufficient jurisdictional contacts to exercise general or specific jurisdiction as to Leary, and that with respect to the Operating Agreement, that he did not undertake any personal obligations nor sign in his individual capacity. He also contends that the forum-selection clause is invalid under Delaware law. Conversely, Coinmint and CLT contend that the forum-selection clause is valid under Texas, Delaware, and Puerto Rican law. During the pendency of this appeal, Coinmint and CLT have moved for sanctions. In their brief and in their motion, they report that Capital filed a derivative action on behalf of Coinmint against CLT, Soniat, and Coinmint in Harris County, asserting that jurisdiction is proper under the Operating Agreement.

## A. Did the trial court err by denying Leary and Capital's special appearance?

Whether Leary is subject to personal jurisdiction in Texas is a question of law subject to de novo review. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as in today's case, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary

6

to support the trial court's ruling that are supported by evidence. *M&F Worldwide Corp. v. Pepsi–Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 884–85 (Tex. 2017).

The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction under the Texas long-arm statute. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). In turn, a specially appearing defendant has the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). The long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or who "commits a tort in whole or in part in [Texas]." Tex. Civ. Prac. & Rem. Code § 17.042(1),(2) (West, Westlaw through 2019 R.S.). In this case, Coinmint and CLT satisfied their initial burden by asserting that their claims fell under a valid forum-selection clause.

*Jurisdictional analysis based on forum-selection clause*

Ordinarily, we look to a defendant's contacts with forum as starting point in our jurisdictional analysis. However, personal jurisdiction is a "waivable right" and "there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp.,* 471 U.S. at 473 n.14 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, (1982)). To the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas. *Id.* For example, a contractual "consent-to-jurisdiction clause" subjects a party to personal jurisdiction, making an analysis of that party's contacts with the

7

forum for personal jurisdiction purposes unnecessary. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014), *as corrected on denial of reh'g* (May 2, 2014) citing *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.)

As an initial matter, we consider whether the claims fall within the forum-selection clause's scope; this analysis depends on the 'parties' intent as expressed in their agreement and a "common-sense examination" of the substantive factual allegations. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017). In this analysis, legal theories and causes of action, and whether a claim is pleaded as a contract or tort are not dispositive. *Id*. Texas courts must enforce forum-selection clauses in contracts between the parties, "unless the party opposing enforcement 'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *In re Automated Collection Techs.,* 156 S.W.3d 557, 559 (Tex. 2004) (orig. proceeding) (quoting *In re AIU Ins. Co.,* 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding)).

Our jurisdictional analysis begins and ends on the question whether Leary consented to jurisdiction by operation of the forum-selection clause. The clause, joined with a choice-of-law provision, states:

> This Agreement and the application of interpretation hereof, shall be governed exclusively by the laws of the State of Delaware, and specifically the [Delaware Limited Liability Company Act]. Venue for any dispute shall lie in Harris County, Texas.

Neither the construction of the text of the provision or its scope in relation to the claims asserted present a significant issue between the parties, but we briefly address this threshold issue. When a forum-selection clause such as this clause encompasses all "disputes" arising out of the agreement, instead of "claims," its scope is necessarily broader than claims based solely on rights originating

exclusively from the contract. *Sheldon*, 526 S.W.3d at 439. Reviewing the factual allegations supporting the Coinmint and CLT's contractual and noncontractual complaints we consider whether (1) the existence or terms of the Operating Agreement are operative facts in the dispute and (2) "but for" that agreement Coinmint and CLT would not be aggrieved. See *Id*. at 440. Employing a common-sense examination of the substance of the claims made and the terms of the forum-selection clause, we conclude the claims fall within the clause's scope. The dispute substantively concerns (1) the management or alleged mismanagement of the corporate assets and business relationships affecting those assets, (2) deviations from the terms of the operating agreement, (3) disruptions, various misrepresentation, or omissions of required disclosures, and (4) actions taken without required notice in the agreement.

Leary contends that the forum-selection clause is invalid under Delaware law and therefore void. Specifically, Leary complains that it conflicts with a particular sentence in a section of the Delaware code pertaining to the service of process on limited liability company managers (and liquidating trustee): 6 Del. C. § 18-109(d). The first sentence of the provision states that "a manager or member [of an LLC] may consent to be subject to the nonexclusive jurisdiction of the courts of . . . a specified jurisdiction." 6 Del. C. § 18-109(d). The second sentence, which is Leary's focus, states a member that is "not a Manager may not waive its right to maintain a legal action or proceeding in the courts of the State of Delaware with respect to matters relating to the organization or internal affairs of a limited liability company." 6 Del. C. § 18-109(d). Leary does not contend he is a non-managing member directly implicated by the provision, but contends—and we agree—that Capital is. However, Leary goes further, arguing, without significant explanation that "because Capital cannot waive its right to maintain a legal action

9

or proceeding in Delaware courts, neither can its representative, Appellant Leary." First, to the extent Leary contends that he signed the Operating Agreement, like Soniat, as a representative to a member-manager, we disagree. The Operating Agreement and its signature page plainly show that Leary was designated as a manager and signed in his individual capacity as a manager.

Second, to the extent Leary argues that the Delaware statute, because it applies to Capital, renders the forum-selection clause a nullity, we disagree. The trial court gives the forum-selection clause full effect absent a strong showing by the resisting party that the court should set aside. *Deep Water Slender Wells, Ltd. v. Shell Intern. Expl. & Prod., Inc.*, 234 S.W.3d 679, 692–93 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). At least one Delaware court has found an LLC agreement that contained language similar to the *forum-selection clause* in our case is compatible with the Delaware code. *Li v. loanDepot.com, LLC*, No. CV 2019-0026-JTL, 2019 WL 1792307, at *2 (Del. Ch. Apr. 24, 2019).

In upholding the forum-selection clause in favor of a California forum in a Delaware LLC agreement, the *Li* court recently explained:

> The plain language of the second sentence only extends to non-managing members, and it only preserves the ability of a non-managing member to bring or maintain a suit in Delaware. It does not encompass other types of claimants under an LLC agreement, and it does not mandate that all litigation involving internal governance disputes with non-managing members take place in the Delaware courts. . ... The second sentence of Section 18-109(d) is thus a narrow provision that only preserves the ability of a non-managing member to sue in Delaware.

*Id.* at *2 (Del. Ch. Apr. 24, 2019). The Delaware court concluded that because the claims at issue sought to be dismissed were not brought by *Li* in his capacity as a non-managing member, they should be dismissed. We take the view of the Delaware court in *Li* and agree that the second sentence Section 18-109(d) is "a

narrow provision" and does not invalidate the forum-selection clause.

Leary's situation is less complicated than Li because Leary is not a member and Capital, the only non-manging member, is not asserting any claims. At the time the trial court issued its order, this case did involve internal governance disputes with a non-managing member, Capital. However, those claims were not brought by Captial. Had Capital asserted claims, then the forum-selection clause would have been non-exclusive with respect to those claims since Capital was a non-managing member. The clause is otherwise mandatory with respect to all other claimants and all other claims such the claims Coinmint and CLT assert here were required to be brought in Texas.

Leary is not a non-managing member; he is a manager who signed in his individual capacity, and he cannot avoid the implication of the forum-selection clause. *In re Fisher*, 433 at 532 (a contractual "consent-to-jurisdiction clause" subjects a party to personal jurisdiction, making an analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary); *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 716 (Tex. App.—Dallas 2014, pet. denied) (indicating a manager signing an LLC operating agreement is personally bound to arbitration clause in the agreement).

Having held that the appellate record demonstrates no fraud or overreaching, insufficient evidence to conclude enforcement of the clause would be or unjust, insufficient evidence to conclude enforcement would contravene public policy, and no compelling evidence that the forum would be seriously inconvenient for trial, we conclude that trial court was left with no choice but to enforce the mandatory forum-selection clause. Because we conclude Leary consented to the jurisdiction of the claims asserted in this case, we conclude that the trial court did not err in its analysis.

**B. Is Leary's appeal frivolous and do circumstances require that we assess sanctions under Rule 45?**

On a motion for sanction on appeal under Rule 45, after notice and a reasonable opportunity for the party targeted in the motion to respond, we may award "just damages" if, without consideration of any matter that does not appear in the record, briefs, or other papers filed, the court makes an objective determination that the appeal is frivolous. *Riggins v. Hill*, 461 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). We review the record from the viewpoint of the advocate and decide whether the advocate had reasonable grounds to believe the judgment could be reversed. *Id.* The imposition of Rule 45 damages is a matter within our discretion, which we exercise with prudence and caution after careful deliberation. *Id.* Rule 45 does not require an award of damages in every frivolous appeal. *Id.* Instead, "we will do so only in truly egregious circumstances." *Sintim v. Larson*, 489 S.W.3d 551, 559 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The question appellant raised in this appeal — how to reconcile the placement of a mandatory forum-selection clause in a Delaware limited liability company's operating agreement against Delaware's no-venue-waiver provision presents an issue worthy of resolution. But for the appeal we would not have considered it. We conclude there is no compelling reason to conclude that this appeal was frivolous or that sanctions are necessary, and therefore, deny appellee's motion for sanctions.

## III. CONCLUSION

We affirm.

/s/     Randy Wilson
        Justice

Panel consists of Justices Jewell, Spain, and Wilson.