**In re Billy L. LITTLE and McKnight & Little Contracting Company, Relators.**

**No. 01–99–00247–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 17, 1999.

Pam Little Williamson, Conroe, Richard R. Burroughs, Cleveland, for Relator.

Raymond Jude Blackwood, Houston, Floyd H. Christian, Angleton, Charles E. Frost, Jr., Houston, for Real Parties in Interest.

Panel consists of Chief Justice SCHNEIDER and Justices HEDGES and ANDELL.

## OPINION

SCHNEIDER, Chief Justice.

Relators, Billy L. Little and McKnight & Little Contracting Company, file this petition for writ of mandamus complaining of an order signed on October 21, 1998, by the Hon. James A. Blackstock, Judge of the County Court at Law No. 3 of Brazoria County, Texas, which denied the relators' motion to disqualify opposing counsel.

## BACKGROUND

### A. The Suit

Relators, Billy L. Little and McKnight & Little Contracting Company (M & L), brought suit against the Estate of Lawrence P. McGinnes seeking a declaratory judgment to determine the ownership interest of the stock of M & L. In a separate suit, the executor of Lawrence P. McGinnes's estate, Charles Barrier, had sued relators claiming that the estate owned a majority interest in M & L. The two suits were consolidated. After consolidation, McGinnes Brothers, Inc. intervened in the suit claiming a capital account deficit of $780,000 in a joint venture and that M·& L owed it $953,000 on loans and advances to the joint venture.

### B. Two Alleged Conflicts of Interest

#### 1. Paul Martin

In 1973, the law firm of Fulbright, Crooker & Jaworski prepared a Stock Retirement Agreement for W.J. McKnight, a major shareholder of M & L. By way of this transaction, McKnight's stock in the company was liquidated and certain shares were given to his nephew, Billy L. Little, and certain shares were sold to Lawrence P. McGinnes and George Lowrey. At the time of the 1973 transaction, Paul E. Martin worked at Fulbright, Crooker & Jaworski.

In the current dispute, the estate of Lawrence P. McGinnes is represented by Charles Frost of the law firm of Chamberlain, Hrdlicka, White, Williams, and Martin ("Chamberlain, Hrdlicka"). Paul E. Martin is now a shareholder in the same firm.

#### 2. Sydney Williams

Sydney Williams is a partner in the law firm of Chamberlain, Hrdlicka. He began representing Lawrence P. McGinnes and McGinnes Bros. Inc., in 1987, and continued representing the estate of Lawrence P. McGinnes after McGinnes's death in 1995.

In 1995, Williams met with the executor of the estate, Barrier, and relator, Billy L. Little, regarding a possible stock sale to a corporation entitled Southwest Wire Rope. Although Williams did not consider Billy Little a client (he considered his client to be the estate of Lawrence McGinnes), he drafted a letter for Billy Little to sign on

behalf of M & L, which rejected Southwest Wire Rope's offer.

When Charles Frost of Chamberlain, Hrdlicka first appeared as counsel of record for the estate in the current litigation on July 19, 1996, Little's attorney raised the issue of whether there was a conflict. Relators did not file a motion to disqualify Chamberlain, Hrdlicka until July 1998.

## C. The Motion to Disqualify and the Trial Court's Ruling

On July 30, 1998, relators filed a motion to disqualify the estate's counsel, Charles Frost, on the basis of the two alleged conflicts with his partners in the law firm of Chamberlain, Hrdlicka. The trial court held a hearing on the motion to disqualify on September 10, 1998. On September 24, 1998, the trial court sent the following letters to the parties:

> After a review of the arguments presented with supporting authorities in response to Defendants' Motion to Show Authority to Act and Defendants' Motion to Disqualify Counsel, it is the Court's opinion that both motions are denied.

> Mr. Frost is directed to prepare an order reflecting the Court's ruling and circulate to opposing counsel as to form only.

> A show cause for entry of judgment will be set in this Court on October 16, 1998 at 2:00 with all counsel to be present if the paperwork is not submitted to the court on or before that date. If the paperwork has been submitted, counsel will not be required to appear.

The paperwork was apparently submitted timely because there is no indication in the record of a show cause hearing being held on October 16. The record further shows that the trial court signed the order denying the motion to disqualify counsel on October 21, 1998.

## D. The Mandamus Proceeding

Although the complained of ruling was announced by letter of the court on September 24, 1998, and an order was officially signed on October 21, 1998, relators did not file a mandamus challenging the order until March 16, 1999. Relators' counsel, Richard R. Burroughs, states that he was unaware that the trial court had signed the order until a subsequent hearing was held in the case on December 23, 1998. However, he does not deny that the order was signed on October 21, 1998, or make any explanation of why he was "unaware" of the signing of the order.

## E. Subsequent Events

After the trial court denied relators' motion to disqualify counsel, Charles Frost of Chamberlain, Hrdlicka continued to represent the estate of Lawrence P. McGinnes in this proceeding. During the intervening months, Frost actively participated in the case by filing several motions. Most importantly, on November 12, 1998, Frost, on behalf of his clients filed an interlocutory appeal in this Court challenging the trial court's alleged modification of an agreed injunction. Frost's brief in the interlocutory appeal was due to be filed in this Court on March 21, 1999. This mandamus proceeding was filed on March 16, 1999, just five days before Frost's appellate brief.

## LACHES

■ The real parties in interest claim that this mandamus proceeding is barred by laches because relators delayed in filing their writ of mandamus, to the prejudice of the real parties in interest. We agree.

■ Mandamus is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993); *Furr's Supermarkets, Inc. v. Mulanax*, 897 S.W.2d 442, 443 (Tex. App.—El Paso 1995, orig. proceeding). Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles. *Rivercenter*, 858 S.W.2d at 367; *Furr's Supermarkets*, 897 S.W.2d at 443. One such principle is that

"[e]quity aids the diligent and not those who slumber on their rights." *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795 (1941).

In *Rivercenter*, a lessor waited over four months after the lessee filed a jury demand to assert possible rights under the jury waiver provision of a lease. 858 S.W.2d at 367. In *Furr's Supermarkets*, the relator waited four months after the ruling was made in open court and one month after the ruling was reduced to a written order. 897 S.W.2d at 443. In *International Awards, Inc. v. Medina*, 900 S.W.2d 934, 935–36 (Tex.App.—Amarillo 1995, orig. proceeding), the relator waited more than four months from the time a severance was ordered to seek mandamus relief. In all of these cases, the courts held that laches barred mandamus relief.

In this case, the relators waited almost six months from the date the trial court issued its letter ruling (Sept. 24), five months from the date the order was actually signed (Oct. 21), and almost three months from the date they concede they were aware that the trial court's order had been signed (Dec. 23), before filing their petition for writ of mandamus.

Other than arguing that a busy schedule prevented filing this mandamus in January and February, relators offer no justification for their failure to file this mandamus until March 16, 1999.[1] Furthermore, the record shows that the real parties in interest would be prejudiced if we were to consider the mandamus at this late juncture. The real parties in interest have filed an interlocutory appeal in this Court and their briefing is complete. If we were to order the disqualification of their counsel at this point, we would have to unduly delay what is to be an accelerated appeal, as well as force the real parties in interest to rebrief their appeal with new counsel.

Therefore, we conclude that relators' petition for writ of mandamus is barred by laches and, accordingly, is denied.

---

1. Relators argue that although they requested the reporter's record from the September 10, 1998 hearing on December 23, 1998, the record was not completed until January 7, 1999, and they did not receive it until January 14, 1999. Again, relators' two month delay from the date they received the record is largely unexplained.