**In re George F. BOEHME, Instant-NewsNetwork.com, Inc. and Fort-BendNow, Inc., Relators.**

No. 14–08–00165–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 13, 2008.

Don Jackson, C. Dennis Barrow and Timothy Lankau, Houston, for relator.

David Mitchell Gregory, Edward Friedman, Houston, for real party in interest.

Panel consists of Justices ANDERSON, GUZMAN, and BROWN.

## OPINION

JOHN S. ANDERSON, Justice.

Relator George F. Boehme and two alleged corporate alter egos, InstantNews-Network.com, Inc. and FortBendNow, Inc., have asked in this original proceeding that we issue a writ of mandamus requiring the respondent[1] to enforce a contractual forum-selection clause by dismissing the underlying lawsuit filed by the real party in interest. We conditionally grant the petition.

## BACKGROUND

On April 28, 2006, relator George F. Boehme sold a group of local newspapers to the real party in interest, ASP Westward, L.P. d/b/a Houston Community Newspaper ("HCN"). The Agreement respecting the sale included a non-compete covenant in which Boehme was not to operate or fund a newspaper and/or a "local advertising-based publication," and could not solicit or retain HCN's employees for employment elsewhere.

HCN brought the underlying lawsuit on January 14, 2008, charging Boehme and his alleged alter ego, relator InstantNews-Network.com ("INN"), with violating the Agreement's non-compete covenant by publishing FortBendNow.com ("FBN"). Contemporaneously with the filing of the underlying lawsuit, HCN sought a temporary restraining order, which was granted by an ancillary judge. A hearing on HCN's request for a temporary injunction was set for January 25, 2008. In the interim, the parties engaged in expedited discovery consisting of a document exchange and five depositions.

On January 25, 2008, the respondent presided over the hearing on HCN's request for a temporary injunction. Following a two-day hearing, the trial court granted a temporary injunction against relators and restructured its docket to set the case for a prompt trial during the two-week docket beginning March 24, 2008. The injunction order was then signed on January 30th.

On February 1, 2008, two days after entry of the temporary injunction, relators requested dismissal of HCN's lawsuit pursuant to a forum-selection clause that had been included in the Agreement. That clause provides as follows:

10.12 *Forum: Service of Process.* Any legal suit, action or proceeding brought

---

**1.** The Honorable Sharolyn Wood, presiding judge of the 127th Judicial District Court of Harris County, Texas.

by any party or any of its Affiliates arising out of or based upon this Agreement shall only be instituted in any federal or state court in New York County, New York, and each party waives any objection which it may now or hereafter have to the laying of venue of any such proceeding, and irrevocably submits to the jurisdiction of such courts in any such suit, action or proceeding.

After relators moved to dismiss the underlying litigation, both Boehme and HCN filed actions in New York state court. Following two hearings, the respondent denied relators' dismissal motion on February 25, 2008. This mandamus action followed.

### STANDARD OF REVIEW

■ Mandamus relief will lie if the relator establishes a clear abuse of discretion for which there is no adequate remedy by appeal. *In re AutoNation, Inc.,* 228 S.W.3d 663, 667 (Tex.2007) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). With respect to the resolution of factual issues, we will not disturb the trial court's ruling unless the record clearly demonstrates that the trial court could reasonably have reached only one decision. *See id.* at 839–40. By contrast, review of a trial court's determination of legal principles is much less deferential. *See id.* at 840. A trial court has no discretion in determining what the law is, or in applying the law to the facts; therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

### FORUM–SELECTION CLAUSES

■ Until relatively recently, Texas courts used a different analysis than did federal courts to determine the enforceability of forum-selection clauses. *See Deep Water Slender Wells v. Shell Int'l Exploration & Prod., Inc.,* 234 S.W.3d 679, 687 (Tex.App.-Houston [14th Dist.] 2007, pet. filed). The Supreme Court has now adopted the standard employed by federal courts. *See id.* Under the new standard, a trial court *must* presume that a mandatory forum-selection clause is valid and enforceable. *Id.* at 692 (citing *In re AIU Ins. Co.,* 148 S.W.3d 109, 111–12 (Tex.2004) (orig. proceeding)). This holding comports with the principle that parties generally are free to negotiate agreements as they see fit. *AutoNation,* 228 S.W.3d at 668. Therefore, a trial court must give such a clause full effect absent a strong showing by the resisting party that the clause should be set aside because (1) the clause is invalid based upon reasons such as fraud, undue influence, or overweening bargaining power; or (2) enforcement would be unreasonable and unjust. *Deep Water,* 234 S.W.3d at 692 (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10–15, 92 S.Ct. 1907, 1913–16, 32 L.Ed.2d 513 (1972)).

■ The trial court did not specify its reasoning for denying relators' motion to dismiss. Nevertheless, we will uphold the order on any grounds that are supported by the record. *See Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex.App.-Dallas 1992, orig. proceeding). HCN raises three general grounds in support of the trial court's order. First, HCN contends that enforcement of the clause would be unjust because it would contravene a strong Texas public policy against forum shopping. Second, it argues that Boehme waived enforcement of the clause. Third, HCN urges that we apply the doctrines of laches and quasi-estoppel to deny relators' mandamus petition.

## PUBLIC POLICY EXCEPTION

Enforcement of a forum-selection clause here would be unreasonable and unjust if enforcement would contravene a strong Texas public policy, or if the balance of convenience strongly favors litigation in Texas and litigation in New York would be so manifestly and gravely inconvenient to HCN that it would effectively be deprived of a meaningful day in court. *See Deep Water,* 234 S.W.3d at 692–93. However, a party who seeks to avoid the effects of a forum-selection clause on the basis of unfairness carries a "heavy burden." *See Holeman v. Nat'l Bus. Inst.,* 94 S.W.3d 91, 97 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). HCN seeks to discharge this heavy burden by arguing that, because Boehme waited until after he lost the temporary injunction hearing to seek another forum, he violated a Texas public policy against forum shopping.

Texas courts have recognized an important public policy against forum shopping. *See Reliant Energy, Inc. v. Gonzalez,* 102 S.W.3d 868, 875 (Tex.App.-Houston [1st Dist.] 2003), *aff'd,* 159 S.W.3d 615 (Tex. 2005); *In re Houston Nw. Partners, Ltd.,* 98 S.W.3d 777, 780 (Tex.App.-Austin 2003, orig. proceeding [mand. dism'd]); *DB Entm't v. Windle,* 927 S.W.2d 283, 288 (Tex.App.-Fort Worth 1996, orig. proceeding [mand. dism'd]). HCN contends that Boehme has engaged in improper forum shopping by testing the respondent's ruling on the temporary injunction, and then seeking to re-litigate the same claims in New York. Boehme responds that, because the plaintiff (as in *Guzman* and *West*) chooses where to file the lawsuit, a defendant cannot be guilty of forum shopping.

Although we do not agree that a defendant could *never* forum-shop,[2] we hold that HCN did not satisfy its "heavy burden" of demonstrating that enforcement of the fo-

---

**2.** Although the defendant does not decide where suit is *first* filed, he often has the ability—as here—to control where suit is to *remain* after filing. This type of control occurs most typically in the context of federal removal, and courts have recognized that a defendant's removal decision can involve forum-shopping motivations. *See, e.g., Yellow Cab Co. v. Gasper,* 994 F.Supp. 344, 349 (W.D.Pa. 1998) (citing *Garside v. Osco Drug, Inc.,* 702 F.Supp. 19, 22 (D.Mass.1988) ("The court found this result particularly compelling when the defendant, after the case had been assigned to a specific district judge, assailed its own removal petition *with a possible forum-shopping motive.*")) (emphasis added); *State ex rel. Diehl v. O'Malley,* 95 S.W.3d 82, 91 n. 18 (Mo.2003) ("The existence of the federal statute allowing claims to be removed to the federal court allows defendants a 'forum-shopping' option."); *In re Performance Interconnect Corp.,* No. 06–34482–BJH–7, 2007 WL 2088281, at *6 (Bankr.N.D.Tex. 2007) ("The Defendants' removal of the Fraudulent Transfer Suit involves forum shopping.").

Contrary to relators' argument, then, several state and federal courts have suggested that

forum shopping is not necessarily limited to plaintiffs. *See, e.g., Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 765 (Tex.1993) (Hightower, J., concurring in part and dissenting in part) ("In reality, [the defendant] is forum shopping by seeking to transfer the cause to Harris County."); *Polaris Inv. Mgmt. Corp. v. Abascal,* 890 S.W.2d 486, 489 (Tex.App.-San Antonio 1994, orig. proceeding [leave denied]) (Rickhoff, J., concurring) ("Something is seriously amiss when plaintiffs *or defendants* are allowed to conduct such appalling forum shopping and tactical maneuvering.") (emphasis added); *Ferens v. John Deere Co.,* 494 U.S. 516, 527, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (Scalia, J., dissenting) ("[A] defensive use of section 1404(a) to deprive the plaintiff of [her] 'venue privilege' ... would permit the defendant to engage in forum shopping among States[.]"); *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1158 (5th Cir.1987) ("Thus, our decision today will give some (arbitrary) set of *defendants* the ability to 'forum-shop[.]' ") (emphasis in original); *Wolinsky v. Oak Tree Imaging, LP,* 362 B.R. 770, 781 (S.D.Tex. 2007) ("There is a strong flavor of forum shopping by the defendant[.]").

rum-selection clause here would contravene a strong Texas public policy.

Texas courts have yet to define the term "forum shopping." HCN directs us to the definition found in Black's Law Dictionary, in which "forum shopping" is defined as "attempt[ing] to have his action tried in a particular court or jurisdiction where he feels he will receive the most favorable judgment or verdict." Black's Law Dictionary 655 (6th ed.1990). However, this definition is not instructive in deciding whether Boehme's conduct rises to the level of that type of behavior that violates Texas public policy. After all, an attorney who is properly representing his client in a zealous fashion, if faced with a *legitimate* decision as to two forums in which his client's case might be heard, should—to some extent—prefer the forum that presents his client with the best chance of success. *See generally* Tex. Disciplinary R. Prof'l Conduct 3.01 cmt. 1, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9) ("The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure.").

 Thus, attorneys who abuse the legal process—as through improper forum-shopping—may be sanctioned. *See, e.g., In re Bennett,* 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding). Therein plaintiffs' attorneys filed sixteen lawsuits, each of which was randomly assigned to different district courts. *See id.* at 36. The attorneys desired a particular district court, but none of the first sixteen cases were assigned to that court. *See id.* The seventeenth lawsuit was. *See id.* Five days after securing the 105th District Court as the forum of choice, the attorneys then non-suited all sixteen previous lawsuits. *Id.* at 37. They admitted that their tactic was designed to get their clients' claims before a particular judge. *See id.* The trial court sanctioned each lawyer for abuse of the judicial process. *See id.* at 39. The Texas Supreme Court upheld the sanctions order:

> Plaintiffs' counsel admitted that the filing scheme was designed to ensure adjudication by a particular judge. The practice of filing multiple cases without intent to prosecute most of them, in search of a court perceived to be sympathetic, subverts random assignment procedures that are in place in many multi-court counties and is an abuse of the judicial process. This type of conduct, if tolerated, breeds disrespect for and threatens the integrity of our judicial system.

*Id.* at 40. In contrast with the conduct of the attorneys in *Bennett,* Boehme did no more than participate in limited discovery—at HCN's insistence—and defend against the temporary injunction that his opponent sought. We hold that the trial court could not have concluded that Boehme abused the legal process in subsequently invoking the forum-selection clause.[3] Therefore, enforcement here

---

**3.** HCN claims that *Guzman v. Texas Mutual Insurance Co.* and *West v. Joseph* are analogous to Boehme's conduct below, and support the claim that Boehme was forum shopping. *Guzman v. Texas Mut. Ins. Co.,* No. 13-06-227-CV, 2007 WL 1439742 (Tex.App.-Corpus Christi May 17, 2007, no pet.) (mem. op.); *West v. Joseph,* No. 03-00-00691-CV, 2001 WL 420743 (Tex.App.-Austin Apr. 26, 2001, no pet.) (not designated for publication). We are not persuaded by these cases. Although

the appellate court in *Guzman* affirmed a sanctions order against the attorney, the court specifically reserved opinion as to whether the conduct in question constituted improper forum shopping. *See id.* at *4. *West,* as an unpublished opinion, has no precedential value. *See* Tex.R.App. P. 47.7. Moreover, we note that the sanctionable conduct in *West* consisted of an entire "course of conduct calculated solely to harass [his opponent] and needlessly increase the cost of litigation[.]"

would not contravene a strong Texas public policy.

■ The mandamus record indicates that it was HCN's parent company, with the assistance of its New York lawyers, that drafted the Agreement and selected New York as the exclusive forum. Aware of the possibility that Boehme might invoke the clause, HCN proceeded nonetheless to file their lawsuit in Texas, obtain a temporary restraining order, and secure a temporary injunction in a forum other than that prescribed by the forum-selection clause that HCN chose to include in the parties' Agreement. Boehme assigns this conduct as forum shopping on HCN's part that was motivated by tactical concerns that attorney fees would be recoverable in Texas but not in New York.[4] HCN responds that its decision to file in Texas stemmed from concerns that New York might not have personal jurisdiction over INN and FBN, which are nonsignatories to the Agreement.

We note that the Supreme Court has cited forum shopping as one of the reasons to *enforce* forum-selection clauses. *See AutoNation*, 228 S.W.3d at 667–68. However, resolution of this issue does not require that we decide whether HCN engaged in forum shopping. Nor do we conclude that forum shopping could never be an appropriate basis for a trial court to invalidate a forum-selection clause. Instead, we conclude that enforcement of the parties' agreed-upon forum-selection clause would not contravene a strong Texas public policy in this case.

## WAIVER

■ Relying upon the same facts that underpin its public policy argument, HCN next contends Boehme has waived enforcement of the forum-selection clause. A forum-selection clause may be waived as with any other contractual right. *Mabon Ltd. v. Afri–Carib Enters., Inc.*, 29 S.W.3d 291, 298 (Tex.App.-Houston [14th Dist.] 2000, no pet.). In deciding whether a party has waived a forum-selection clause, the Supreme Court has repeatedly resorted to cases involving arbitration agreements. *See AIU Ins. Co.*, 148 S.W.3d at 121; *In re Automated Collection Techs.*, 156 S.W.3d 557, 559 (Tex.2004) (orig. proceeding). The test for waiver in the arbitration context asks whether (1) the party seeking arbitration has "substantially invoked the judicial process," and (2) the party resisting arbitration suffered actual prejudice as a result. *See, e.g., Williams Indust., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration actually intended to waive its rights. *EZ Pawn Corp. v. Mancias*, 934

---

*West*, 2001 WL 420743, at *4. To the extent that HCN analogizes *West* in its claim that Boehme seeks to waste judicial resources by relitigating the issues from the temporary injunction hearing, we note that the attorney in *West* prosecuted his lawsuit for almost two years before non-suiting—and refiling in another court—on the morning of the trial setting. *See id.* at *2.

**4.** Neither Texas nor New York allows for the recovery of attorney fees unless authorized by statute or contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006); *Marrotta v. Blau*, 241 A.D.2d 664, 659

N.Y.S.2d 586, 586 (N.Y.App.Div.1997). The contract between the parties does not provide for attorney fees. However, Texas Civil Practice and Remedies Code section 38.001 allows a successful party in a breach-of-contract action to recover its reasonable and necessary attorney fees. *See id.; Mullins v. Mullins*, 889 S.W.2d 550, 554 (Tex.App.-Houston [14th Dist.] 1994, writ denied). As best we can determine, New York has no similar statute. Attorney fees are therefore not recoverable in a contract action absent specific provision in the contract itself. *See City of New York v. Zuckerman*, 234 A.D.2d 160, 651 N.Y.S.2d 473, 474 (N.Y.App.Div.1996).

S.W.2d 87, 89 (Tex.1996) (orig. proceeding).

The Supreme Court of Texas recently announced that waiver is to be decided on a case-by-case basis by employing a "totality of the circumstances" test. *See Perry Homes v. Cull*, 258 S.W.3d 580, 2008 WL 1922978, slip op. at *5 (Tex. May 2, 2008). While acknowledging that not all of these factors may be present in a single case, *see id.*, the Court recommended that the following factors be considered:

1. whether the movant was the plaintiff, who chose to file in court, or the defendant, who merely responded;
2. how long the movant delayed before seeking arbitration;
3. whether the movant knew of the arbitration clause all along;
4. how much pretrial activity related to the merits, rather than arbitrability or jurisdiction;
5. how much time and expense had been incurred in litigation;
6. whether the movant sought or opposed arbitration earlier in the case;
7. whether the movant filed affirmative claims or dispositive motions;
8. what discovery would be unavailable in arbitration;
9. whether activity in court would be duplicated in arbitration; and
10. when the case was to be tried.

*See id.* at *4–5, 258 S.W.3d at 585–86, 2008 WL 1922978. To the extent that these factors can be applied to this case involving a forum-selection clause, we endeavor to do so.

▮▮ The conduct that HCN contends amounts to waiver consisted of (1) deposing three witnesses, (2) producing two witnesses for deposition, (3) exchanging documents with HCN, and (4) participating in a temporary injunction hearing. In our opinion, these limited activities do not constitute waiver under the *Perry Homes*

test. Boehme, who moved to enforce the clause, is the defendant below and merely responded to HCN's suit. The record does not indicate whether Boehme was aware of the existence of the clause; although he is described as a sophisticated businessman, HCN—not Boehme—drafted the Agreement and selected New York as the exclusive forum for disputes. Unlike in *Perry Homes*, in which the movants vehemently opposed arbitration until the very eve of the trial setting, *see id.* at *2, 258 S.W.3d at 584–85, 2008 WL 1922978, the forum-selection clause was not raised by any party until Boehme's motion to dismiss. Nor did Boehme seek affirmative relief below, other than the dismissal of the lawsuit pursuant to the forum-selection clause.

As to Boehme's alleged delay in seeking to enforce the clause, this inquiry appears to be a combination of a temporal component and one asking about the extent to which discovery had been completed. *See id.* at *8, 258 S.W.3d at 587, 2008 WL 1922978. Only eighteen days passed between the filing of suit and Boehme's motion to dismiss and, as this rule is one of proportion, we note that Boehme's enforcement motion was filed less than one-third of the way through this litigation (counting from the date suit was filed to the then-scheduled trial date). This is not merely a temporal analysis, however:

> [I]n view of the written discovery and depositions already completed, the record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until "the eve of trial" to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here.

*Id.* HCN contends that discovery is substantially complete, as was evidenced by

the trial court's willingness to place the case on the trial docket fewer than sixty days after the hearing on the temporary injunction.

The "delay" factors from *Perry Homes* do not translate well from the arbitration context. One of the benefits of arbitration is that it severely limits pretrial discovery. *See id.* In the arbitration context, then, engaging in significant discovery can be inconsistent with an eleventh-hour request for arbitration. *See generally id.* That concern is not as pronounced when the clause in question is designed not to eliminate or lessen pretrial discovery but, rather, to simply specify the forum that would resolve the dispute. Thus, Boehme's action in participating in five depositions and exchanging documents is not inconsistent with then seeking to relocate the dispute to New York state courts.

Texas courts have held that the following actions did *not* substantially invoke the judicial process:

- Moving to set aside a default judgment; and requesting a new trial. *See In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex.2007) (orig. proceeding).
- Filing an answer; propounding one set of eighteen interrogatories and one set of nineteen requests for production; and moving to compel arbitration within six months after the filing of suit. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998) (orig. proceeding).
- Requesting a jury trial; paying a jury fee; filing a general denial in lieu of a special appearance; and waiting five months before seeking to enforce the forum-selection clause. *See AIU Ins. Co.*, 148 S.W.3d at 121.
- Moving to dismiss for lack of jurisdiction; filing original and amended answers and counterclaims; requesting a jury trial; moving to quash depositions; noticing the deposition of, and then deposing, the opponent's corporate representative; drafting an agreement to consolidate cases and complete discovery; and requesting that the opponent pass hearings on summary judgment motions. *See Matthews v. USA Employment, L.L.C.*, No. 01–06–01016–CV, 2007 WL 926566, at *7 (Tex.App.-Houston [1st Dist.] March 29, 2007, no pet.) (mem. op.).
- Filing a lawsuit; and agreeing to a temporary injunction. *See Practicehwy.com, Inc. v. Albany IVF Fertility & Gynecology, PLLC*, No. 05–06–00222–CV, 2006 WL 2960838, at *2 (Tex.App.-Dallas Oct.18, 2006, no pet.) (mem. op.);
- Filing cross-actions for indemnity; and pursuing injunctive relief. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex.2006) (orig. proceeding).
- Waiting until after the entry of a temporary injunction before invoking the arbitration clause. *See Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535, 539 (Tex.App.-San Antonio 2004, no pet.).
- Answering a lawsuit; asserting counterclaims; serving requests for disclosure, twenty-eight requests for production, twenty-five requests for admissions, and nine interrogatories; and filing a motion to compel discovery. *See Automated Collection Techs.*, 156 S.W.3d at 559.

We hold that, under the *Perry Homes* factors and the authorities cited above, Boehme did not substantially invoke the judicial process so as to waive enforcement of the forum-selection clause. Moreover, HCN has not demonstrated that it has suffered prejudice from Boehme's alleged delay in invoking the clause. *See Bruce Terminix*, 988 S.W.2d at 704. Delay alone generally does not establish

waiver. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex.2006) (orig. proceeding). Instead, prejudice connotes an effort by the moving party to "gain an unfair tactical advantage of the opposing party." *Perry Homes*, slip op. at \*8, 258 S.W.3d at 587, 2008 WL 1922978. Generally, courts have looked to such factors as (1) the movant's access to information that would not be discoverable in arbitration, and (2) the opponent's incurring costs and fees due to the movant's actions or delay.[5] *See Williams Indus.*, 110 S.W.3d at 135.

The record does not indicate that Boehme, by waiting until after the temporary injunction hearing to invoke the clause, accessed information that would not be discoverable or useable in the New York litigation. Nor has HCN argued that it was forced to incur additional attorney fees and costs in pursuing the temporary injunction. *See* Tex.R.App. P. 52.3. The record does not show the fees or costs incurred by HCN; how much of those fees or costs were attributable to the prosecution of the temporary injunction; or whether such fees and costs were for matters that could benefit HCN elsewhere in this litigation. *See Williams Indus.*, 110 S.W.3d at 140. Even had that issue been preserved, any prejudice that resulted was probably self-inflicted: "PSC chose to initiate proceedings in a forum other than the one to which it contractually agreed and cannot complain about any duplication of time or efforts that resulted from that choice." *Automated Collection Techs.*, 156 S.W.3d at 560.

We therefore hold that relators have not waived their right to enforce the contractual forum-selection clause.

## LACHES

■■■■ HCN argues further that mandamus relief should be denied on the basis of laches. "Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." *In re Xeller*, 6 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding). Equity aids the diligent, not those who slumber on their rights. *Rivercenter Assoc. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding). Therefore, delay alone can provide ample ground to deny mandamus relief. *See Xeller*, 6 S.W.3d at 624.

■■■■ Unlike HCN's waiver argument, which appears to focus almost entirely on Boehme's actions, the doctrine of laches is a temporal test that looks at the date mandamus was filed. *See id.* (basing laches finding exclusively on the fact of a sixteen-month delay, and specifically referencing the *length* of delay in citing numerous mandamus cases in which laches was held to apply).

5. HCN argues that enforcement of the clause at this juncture would prejudice it in three ways. First, enforcement of the clause may result in incomplete relief inasmuch as INN initially asserted an affirmative defense that the New York court lacked personal jurisdiction. Second, dismissal of the Texas litigation would dissolve the protections afforded by the temporary injunction. Third, HCN would lose the ability to investigate whether Boehme violated the temporary injunction. These arguments, even if taken as true, miss the point of the prejudice analysis. The test is not whether *enforcement* of the clause would prejudice the opposing party—which is the argument HCN has presented—but, rather, whether the moving party's alleged invocation of the judicial process resulted in prejudice. *See Bruce Terminix*, 988 S.W.2d at 704.

HCN argues further that Boehme's delay also prejudiced the trial court, which had arranged its trial docket to accommodate the parties' request for an expedited trial setting. We need not address that complaint; the waiver analysis asks whether prejudice has been suffered by the opposing party, not by others. *See id.*

Boehme sought to dismiss the Texas litigation only eighteen days after HCN filed suit. The dismissal motion was denied on February 25th, and Boehme instituted this original proceeding on March 4th, fewer than ten days later. Cases in which laches has applied to deny mandamus relief have involved delays of months, not a few days. *See id.* (sixteen months); *Tarrant County Hosp. Dist. v. Henry,* 52 S.W.3d 434, 452 (Tex.App.-Fort Worth 2001, no pet.) (finding laches as to mandamus action stemming from two orders, entered eight months and nineteen months before mandamus was filed); *In re Little,* 998 S.W.2d 287, 290 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding) (six months); *Int'l Awards, Inc. v. Medina,* 900 S.W.2d 934, 935–36 (Tex.App.-Amarillo 1995, orig. proceeding) (four months); *Furr's Supermarkets, Inc. v. Mulanax,* 897 S.W.2d 442, 443 (Tex.App.-El Paso 1995, orig. proceeding) (same); *Rivercenter,* 858 S.W.2d at 367–68 (same).

Shorter delays in filing for mandamus have repeatedly been excused. *See, e.g., Strickland v. Lake,* 163 Tex. 445, 448, 357 S.W.2d 383, 384 (Tex.1962) (orig. proceeding) (two months); *B.F. Goodrich Co. v. McCorkle,* 865 S.W.2d 618, 621 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding) (finding a one-month delay reasonable, even where mandamus may have been used as a tactical device to derail a trial setting).

We hold that Boehme did not wait an unreasonable time before seeking mandamus relief. We therefore decline to apply the equitable doctrine of laches to Boehme's claims in this original proceeding.

## QUASI–ESTOPPEL

Finally, HCN argues that the doctrine of quasi-estoppel should prevent Boehme from receiving mandamus relief. Where applicable, quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party. *See Eckland Consultants v. Ryder, Stilwell, Inc.,* 176 S.W.3d 80, 87 (Tex.App.-Houston [1st Dist.] 2004, no pet.). The doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one in which it had acquiesced, or from which it had accepted a benefit. *Id.* Generally, quasi-estoppel is applied in contract actions. *See id.* ("[Q]uasi-estoppel forbids a party from accepting the benefits of a *transaction* and then subsequently taking an inconsistent position to avoid corresponding obligations or effects.") (emphasis added). Even were we to extend the doctrine as requested by HCN, we find quasi-estoppel to be inapplicable to these facts.

HCN contends that Boehme acquiesced in the trial court's review of the evidence and opinion "on the merits of the case," and also accepted the benefits of the trial court's rearranging of its trial docket to grant a preferential trial setting. Boehme's *best* outcome from the temporary injunction hearing would have been a denial of his opponent's request for affirmative relief. We do not agree that Boehme, who was required to incur attorney fees to defend himself, enjoyed a benefit from HCN's request for a temporary injunction against him. Nor has HCN argued that it was disadvantaged. *See id.* Therefore, the doctrine of quasi-estoppel is not available to HCN on these facts.

## CONCLUSION

The Supreme Court has repeatedly held that a trial court must enforce a mandatory forum-selection clause, and that the failure to do so constitutes an abuse of discretion. *See AIU Ins. Co.,* 148 S.W.3d at 111–12. Because HCN has not satisfied its burden of demonstrating that enforce-

ment here would contravene a strong Texas public policy, and because relators did not waive their right to enforce the clause, the trial court abused its discretion in denying relators' motion to dismiss.

Without hearing oral argument, we conditionally grant the petition for a writ of mandamus, direct the trial court to vacate its February 28, 2008 order, and dismiss HCN's lawsuit against relators. The writ will issue only if the trial court fails to act in accordance with this opinion. We deny as moot relators' Motion for Emergency Temporary Relief.