**Affirmed and Opinion filed October 21, 2014.**



In The

# Fourteenth Court of Appeals

NO. 14-13-00977-CV

**PETER SMITH, Appellant**

**V.**

**KENDA CAPITAL, LLC, Appellee**

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-68381**

## O P I N I O N

Peter Smith signed a contract with Kenda Capital B.V. ("Kenda Parent") governing Smith's rights in connection with securities held by Smith and issued by Kenda Parent. Smith signed a separate contract with a wholly owned subsidiary of Kenda Parent called Kenda Capital, LLC ("Kenda Subsidiary") to serve as Kenda Subsidiary's chief human resources officer. Smith's rights concerning the securities issued by Kenda Parent are linked to Smith's employment status with

Kenda Subsidiary.

Smith sued Kenda Subsidiary in Harris County district court and alleged that it fraudulently induced him to accept employment. Smith contends that Kenda Subsidiary did so when its managing director and chief financial officer made material, pre-employment misrepresentations to Smith and omitted material information concerning the value of the securities held by Smith and issued by Kenda Parent as part of Smith's compensation for working at Kenda Subsidiary.

The trial court dismissed Smith's suit against Kenda Subsidiary pursuant to a forum selection clause contained in the contract between Smith and Kenda Parent. Smith challenges the trial court's dismissal order on appeal. We reject Smith's contentions and affirm the trial court's order.

## BACKGROUND

Smith signed an "Employment Agreement" with Kenda Subsidiary effective as of October 26, 2009. Among other provisions, the Employment Agreement specifies the base salary that Kenda Subsidiary will pay to Smith. Paragraph 17 of the Employment Agreement states: "The venue for any dispute arising out of this Agreement or employee's employment with the Company shall be any state or federal court of competent jurisdiction in Harris County, Texas."

In conjunction with his employment at Kenda Subsidiary, Smith also signed a separate contract with Kenda Parent on October 19, 2009, that the parties refer to as the "Carry Agreement." Smith's rights under the Carry Agreement with Kenda Parent were part of his compensation for serving as Kenda Subsidiary's chief human resources officer under the Employment Agreement.

The Carry Agreement with Kenda Parent governs Smith's rights in connection with closely held securities called "Profit Sharing Certificates –

2

Depository Receipts." This opinion will call them "Depository Receipts" for ease of reference.

The Depository Receipts are based on a 1/10th fractional interest in profit sharing certificates issued by a technology venture capital fund managed by Kenda Parent. The profit sharing certificates issued by the fund are held by Kenda Parent; in turn, Kenda Parent issues the Depository Receipts. If the underlying fund reaches a certain level of profitability, then holders of the Depository Receipts have the right to receive a portion of those profits.

The Carry Agreement identifies Kenda Parent as the "Issuer" and Smith as the "Participant." The Carry Agreement states: "The Participant is an employee of [Kenda Subsidiary] . . . which is a subsidiary of the Issuer." It continues: "The Issuer has agreed to issue certain PSC Depository Receipts to the Participant and subject to the terms of this Agreement." A later provision in the Carry Agreement specifies that Kenda Parent will issue 16 Depository Receipts to Smith. According to Smith's appellate brief, "The Carry Agreement is merely the vehicle used to issue [Depository Receipts] . . . to [Smith] . . . as part of his employment compensation package."

The Carry Agreement between Smith and Kenda Parent contains a forum selection clause. This clause in paragraph 13.2 states that "[t]he courts of England" shall have "exclusive" jurisdiction "to settle any dispute between the parties arising in connection with this Agreement and a dispute in connection with any non-contractual obligation arising out of or in connection with this agreement . . . ."[1]

---

[1] Paragraph 13.2 allows an exception to the grant of exclusive jurisdiction under certain circumstances as stated in paragraph 13.3. Smith does not contend that the circumstances described in paragraph 13.3 are present in this case.

3

Smith asserts that, before he terminated his prior employment and accepted the job with Kenda Subsidiary, he engaged in and relied upon discussions with Kenda Subsidiary regarding the Depository Receipts. He says Kenda Subsidiary's officers made representations to him about the value of the Depository Receipts and events that could affect this value; these alleged representations included the possibility of a second fund being created from which Kenda Parent could distribute additional profits via the Depository Receipts.

After he terminated his prior employment and signed the Employment Agreement with Kenda Subsidiary in October 2009, Smith alleges that Kenda Subsidiary "began disclosing information concerning the negotiations with the investors which ultimately led to significant changes in terms that affected those who held [Depository Receipts] . . . ." According to Smith, Kenda Subsidiary belatedly disclosed to him that "performance levels and time criteria had to be met before the investors would give their approval for a second fund to be raised." He asserts that in November 2009 he learned Kenda Subsidiary's "statements and representations were in fact misrepresentations that ultimately resulted in the termination of his employment and a substantial loss in the compensation he was previously told he would receive." He further asserts that "[i]information critical to his decision to accept employment with [Kenda Subsidiary] . . . was misrepresented, causing him to rely on false information and accept employment with [Kenda Subsidiary] . . . to his detriment." Smith alleges as follows in his petition: "The economic impact caused to Mr. Smith by the misrepresentations made by Kenda [Subsidiary] is substantial, calculated to conservatively exceed $900,000.00."

Smith sued Kenda Subsidiary in Harris County district court on November 16, 2012, asserting claims for fraud and breach of contract. Kenda Subsidiary filed

its "Plea in Abatement and Original Answer" on January 4, 2013, in which it (1) asserted a general denial; and (2) sought "abatement of this suit and the dismissal of Plaintiff's claims for fraud and misrepresentation" pursuant to the Carry Agreement's forum selection clause. On July 15, 2013, Kenda Parent filed a "Limited Petition in Intervention" for "the sole purpose of enforcing a mandatory and exclusive forum selection clause that covers these proceedings . . . ." Kenda Parent and Kenda Subsidiary also filed a joint motion to dismiss on that date "based on a mandatory exclusive forum selection clause designating the courts of England as the exclusive jurisdiction for resolving Plaintiff's claims . . . ."

Smith filed a response to the motion to dismiss on August 8, 2013; he simultaneously moved to strike Kenda Parent's petition in intervention. The trial court signed an order on August 19, 2012 in which it granted the motion to dismiss and dismissed with prejudice "all claims the parties alleged or could have alleged in this case . . . ." The trial court signed an order on October 14, 2013, overruling Smith's motion to reconsider the August 19, 2012 dismissal order. Smith timely filed a notice of appeal on October 23, 2013.

## ANALYSIS

Smith contends on appeal that the trial court erred in dismissing his fraud claims against Kenda Subsidiary pursuant to the Carry Agreement's forum selection clause because (1) "the facts related to such claims are outside the scope of" the Carry Agreement; and (2) "the surrounding circumstances relevant to [Smith's] . . . claim[s] . . . were separate and apart from the subject matter within the Carry Agreement and its forum selection clause."

Determining the propriety of dismissal turns on an analysis of the Carry Agreement in light of Texas legal standards governing enforcement of forum selection clauses.

## I. Standards Governing Enforcement of Forum Selection Clauses

A motion to dismiss is the proper procedural mechanism to enforce a forum selection clause. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111 (Tex. 2004) (orig. proceeding); *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). "We review the trial court's granting of such a motion for an abuse of discretion." *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 687 (citing *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). "However, to the extent that our review involves the construction or interpretation of an unambiguous contract, the standard of review is de novo." *Id.*

A trial court must presume that a mandatory forum selection clause is valid and enforceable. *See In re AIU Ins. Co.*, 148 S.W.3d at 111-12; *In re Boehme*, 256 S.W.3d 878, 881 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 692; *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The trial court gives full effect to a forum selection clause "absent a strong showing by the resisting party that the court should set aside the clause because (1) the clause is invalid based on reasons such as fraud, undue influence, or overweening bargaining power; or (2) enforcement would be unreasonable and unjust." *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 692 (citations omitted).

Smith does not contend that the Carry Agreement's forum selection clause is invalid, or that the clause itself was the product of fraudulent inducement. Nor is there any contention that enforcement of a clause mandating proceedings in England is unreasonable and unjust as to Smith, an Irish citizen and Irish-trained lawyer who maintains residences in Houston and England. Smith contends instead

that the forum selection clause in the Carry Agreement between Smith and Kenda Parent does not apply to his fraud claims against Kenda Subsidiary.

"In examining whether claims brought by the plaintiff were within the scope of the clauses, this Court held that a reviewing court should engage in a 'common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims.'" *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding) (per curiam) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir. 2008), *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam), and *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding) (per curiam)).

Reference to cases addressing the applicability of arbitration clauses is appropriate when examining whether particular claims or parties fall within a forum selection clause's reach. *See, e.g., In re Lisa Laser USA, Inc.*, 310 S.W.3d at 884. Arbitration cases are germane because arbitration clauses are "another type of forum-selection clause." *In re AIU Ins. Co.*, 148 S.W.3d at 115; *see also id.* at 115 n.28 ("'An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause . . . .'") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)); *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 694 ("We see no reason that . . . courts would not also apply arbitration law's equitable theories for enforcement by a nonsignatory to non-arbitration forum-selection clauses.").[2]

---

[2] Plaintiff's Original Petition states that Smith demands a jury trial "in this case . . . of fraud, misrepresentation and breach of contract as to any and all issues triable to a jury." The petition makes no further reference to a breach of contract claim. Smith's appellate briefing references only fraud claims; his briefing does not mention a separate breach of contract claim or describe any alleged breach. Smith's reply brief asserts that his claims "are non-contractual by nature" and that his "claims were for misrepresentation." Accordingly, this opinion will analyze the propriety of dismissal with respect to Smith's contentions that Kenda Subsidiary made

## II. Application of Governing Standards

Smith argues that the Carry Agreement's forum selection clause is inapplicable here because he did not sue Kenda Parent, which issued the Depository Receipts to him; Smith sued only Kenda Subsidiary, his immediate employer and a nonsignatory to the Carry Agreement. Smith further argues that his fraud claims arise from misrepresentations and omissions that are "outside the four corners of the Carry Agreement." Smith stresses that the Carry Agreement between Smith and Kenda Parent identifies the number of Depository Receipts he will receive but does not assign a specific dollar value to them. He contends that the alleged fraud concerning the value of his Depository Receipts is "related to [Smith's] . . . employment relationship which was governed by his Employment Agreement, as opposed to the Carry Agreement which merely issues [Depository Receipts] . . . ."

We address Smith's contentions in turn.

### A. Enforcement by Non-Signatory Against a Signatory

Kenda Subsidiary's status as a nonsignatory to the Carry Agreement does not necessarily foreclose application of that agreement's forum selection clause to Smith's claims against Kenda Subsidiary. As the Texas Supreme Court has observed in the arbitration context, "[S]ometimes a person who is not a party to the agreement can compel arbitration with someone who is . . . ." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761-62 (Tex. 2006) (orig. proceeding) (per curiam)); *see also Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 693-94 (applying *Meyer* to determine

---

misrepresentations to him and omitted material facts concerning the Depository Receipts in connection with his acceptance of employment with Kenda Subsidiary. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding) ("[W]e focus on the complaint's factual allegations rather than the legal causes of action asserted.").

that nonsignatories could enforce forum selection clause). A person who has agreed to resolve disputes with one party in a particular forum may be required in some circumstances to resolve related disputes with other parties in the same forum. *See In re Trammell*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, orig. proceeding) (citing *Meyer*, 211 S.W.3d at 304).

One circumstance allowing enforcement by a nonsignatory against a signatory involves direct benefits estoppel. "A non-signatory may invoke the direct benefits estoppel exception to enforce an arbitration clause contained in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims." *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 831 (Tex. App.—Dallas 2013, no pet.). This species of estoppel applies when a signatory's claim against a nonsignatory "references or presumes the existence of the written agreement" containing the clause. *See In re Trammell*, 246 S.W.3d at 821 (citing *Meyer*, 211 S.W.3d at 306, and *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *see also In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538, 544-45 (Tex. App.—Dallas 2011, orig. proceeding) (applying direct benefits estoppel to allow nonsignatory to enforce forum selection clause against signatory).

The circumstances here meet the criteria for allowing nonsignatory Kenda Subsidiary to enforce the Carry Agreement's forum selection clause against signatory Smith based upon direct benefits estoppel.[3]

---

[3] *Meyer* also discussed a separate equitable estoppel theory based on allegations of concerted misconduct among signatories and nonsignatories. *See Meyer*, 211 S.W.3d at 306-07. The Texas Supreme Court subsequently adopted a narrow reading of *Meyer* and concluded arbitration had been compelled in that case "because the plaintiff's claims depended on the underlying agreement, and thus were governed by principles of direct-benefits estoppel." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 n.22 (Tex. 2007) (orig. proceeding) (citing *Meyer*, 211 S.W.3d at 306-07). The court stated: "[W]e have never compelled arbitration based

Smith asserts that he was fraudulently induced to sign the Employment Contract with Kenda Subsidiary because he relied on Kenda Subsidiary's misrepresentations and omissions concerning Depository Receipts issued to him by Kenda Parent under the Carry Agreement. Smith contends that these misrepresentations and omissions harmed him because he accepted the job with Kenda Subsidiary based upon an erroneous belief that the Depository Receipts he would receive under the Carry Agreement as part of his compensation were more valuable than they really were.

It follows that Smith's fraudulent inducement claim necessarily references and presumes the existence of the Carry Agreement. Smith's fraud claim must reference the Carry Agreement and presume its existence because a viable dispute about the Depository Receipts' true value can exist only if Smith had a right to receive Depository Receipts – and, by extension, a portion of any underlying fund profits from Kenda Parent distributed via the Depository Receipts. That right exists only under the Carry Agreement containing the forum selection clause; the Employment Agreement itself contains no reference to Depository Receipts or their value. Direct benefits estoppel applies under these circumstances so that nonsignatory Kenda Subsidiary can enforce the Carry Agreement's forum selection clause against signatory Smith. *See In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d at 544 ("Here, the signatory is attempting to avoid its own

solely on substantially interdependent and concerted misconduct . . . ." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 191; *see also Glassell Prod. Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App.—Texarkana 2014, no pet.) ("The application of the equitable estoppel doctrine to arbitration clauses in Texas is limited to the direct benefit prong.") (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 194-95). The analysis of Smith's claims in this case does not depend upon allegations of substantially interdependent and concerted misconduct; nor does it depend upon the parent-subsidiary relationship between the two Kenda entities. The analysis in this case of a nonsignatory's enforcement ability against a signatory turns on direct benefits estoppel.

contract's burden while enforcing the benefits it derived from the contract.").

Smith cannot avoid this result by arguing that alleged misrepresentations and omissions concerning the Depository Receipts' value arose "outside the four corners of the Carry Agreement," were "separate and apart from the subject matter within the Carry Agreement," and were based on oral and email communications from Kenda Subsidiary's officers rather than specific contract language addressing the value of Depository Receipts.

As a threshold matter, these arguments highlight that Smith's fraud allegations are more strongly connected to the Carry Agreement than to the Employment Agreement; the latter contract makes no reference whatsoever to the allegedly devalued Depository Receipts or to Smith's rights in relation to the Depository Receipts. If these arguments establish that there is only an indirect connection between Smith's allegations and the Carry Agreement, they likewise demonstrate that the connection with the Employment Agreement is even more attenuated.

In any event, these arguments miss the point because direct benefits estoppel analysis focuses on whether a contract containing the clause at issue also includes other terms on which the signatory plaintiff must rely to prosecute its claims. *See VSR Fin. Servs., Inc.*, 409 S.W.3d at 831; *see also In re Trammell*, 246 S.W.3d at 821 (citing *Meyer*, 211 S.W.3d at 306, and *Grigson,* 210 F.3d at 527); *In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d at 544-45. Here, the Carry Agreement containing the forum selection clause does indeed include other terms on which Smith must rely to pursue his claim because the Depository Receipts' value is irrelevant unless Smith had a right to receive them. That right comes from the Carry Agreement, not the Employment Agreement.

11

## B.     Scope of the Clause

The forum selection clause's broad wording underscores its applicability to Smith's fraud claim.

The Carry Agreement's forum selection clause applies to "any dispute between the parties arising in connection with this Agreement" and to "a dispute in connection with any non-contractual obligation arising out of or in connection with this agreement . . . ."   Smith contends on appeal that his claims "are non-contractual by nature" because "[h]e sought damages and judicial relief for the misrepresentations made to him . . . prior to his employment as to the valuation of the [Depository Receipts] . . . and the existence of a Second Fund . . . ."

The clause's "arising out of or in connection with" language indicates a broad reach.  Language of this nature "encompasses any dispute connected to the agreement" containing the forum selection clause, including fraudulent inducement claims that "relate to" the agreement.  *See My Cafe-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.) (fraudulent inducement claim fell within scope of forum selection clause that applied to "'[a]ny dispute arising under or in connection with'" agreement and "'any claim affecting its validity, construction, effect, performance or termination'").

This language in the Carry Agreement's forum selection clause is broad enough to reach Smith's fraudulent inducement claim, which is nominally aimed at the Employment Agreement but nonetheless relates to and bears a connection with allegedly less valuable Depository Receipt rights granted to Smith under the Carry Agreement.  *See id.; see also Courtland Bldg. Co. v. Jalal Family P'ship, Ltd.*, 403 S.W.3d 265, 273 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (fraudulent inducement claims were encompassed by arbitration clause that applied to "all controversies, claims . . . or matters in question arising out of or relating to . . . this

Contract . . ."); *In re Guggenheim Corp. Funding, LLC*, 380 S.W.3d 879, 887 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) ("Courts interpret the phrases 'relates to,' 'relating to,' and 'arising out of or relating to' broadly in forum selection clauses.") (citations omitted); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.) (clause applying to "'any action or proceeding arising out of or relating to this Agreement'" encompassed "all claims that have some possible relationship with the agreement").[4]

Smith relies heavily on *Steakley v. Round One Investments, L.P.*, No. 01-09-00022-CV, 2012 WL 3628800 (Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.) (mem. op.), which involved claims by a group of stock purchasers for statutory fraud in a stock transaction and for violations of the Texas Securities Act. The stock purchasers in *Steakley* signed subscription agreements for the purchase of stock, which did not contain a forum selection clause. *Id.* at *1. They also signed separate nondisclosure agreements containing a forum selection clause applicable to "actions related to the subject matter" of the nondisclosure agreement. *Id.* at *4. "Broadly stated, the subject matter of the nondisclosure agreement is the protection and nondisclosure of information that the parties have deemed to be proprietary, as well as remedies for a breach of the agreement." *Id.* "The nondisclosure agreement was concerned with the use of 'Proprietary Information,' and that term was defined in the agreement to embrace 'business or technical information relating to [Round One Investment] . . .,' including information relating to 'its investors' and 'its proposed transactions.'" *Id.*

The appellate court concluded that "no common-sense reading of the

---

[4] In contrast to paragraph 13.2 of the Carry Agreement, the venue provision in paragraph 17 of the Employment Agreement is drafted more narrowly; it references "any dispute arising out of this Agreement or Employee's employment" but does not include additional "in connection with" language.

nondisclosure agreement permits a conclusion that the subject matter of the agreement is the 'investment relationship' itself . . . ." *Id*. Therefore, the nondisclosure agreement's forum selection clause agreement did not apply "to other disputes arising from the parties' transactions, including the Buyers' claims for breaches of duties existing independently of the specific agreement about the treatment of proprietary information." *Id.* Smith analogizes to *Steakley* and argues as follows: "No common sense reading of the Carry Agreement could permit a conclusion that the subject matter of the agreement is the employment relationship and the representations made in order to solidify/form that relationship."

Smith misplaces his reliance on *Steakley.* In contrast to the nondisclosure statement at issue in *Steakley*, the Carry Agreement containing the forum selection clause addresses the same subject matter upon which Smith predicates his claims – namely, the Depository Receipts whose allegedly diminished value is the source of Smith's alleged monetary harm from Kenda Subsidiary's alleged representations concerning the Depository Receipts.

CONCLUSION

We affirm the trial court's order enforcing the forum selection clause and granting the motion to dismiss.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Busby, and Wise.

14